George Andrews, J.,
delivered the opinion of the Court.
The bill in this cause was filed on the 30th day of June, 1858, in. the Chancery Court, at Athens, in the name of a great number of persons alleged to be heirs- *39 at-law of Thomas Hopkins, deceased, against Thomas H. Calloway and others, in relation to the title to a valuable tract of land, forming an island in Tennessee River, and known as Jolly’s Island.
It is charged, that Thomas Hopkins, who died in 1836, was the owner of said lands; and various grants and mesne conveyances, together with many years of adverse possession, are set forth and charged as establishing a legal title in him; and that his heirs, from the time of his decease, continued in the actual adverse possession until February, 1850, when the defendant, Callo-way, by collusion with others, and undue influence upon the tenants of complainants, procured the island to be vacated; and has since that time, had possession thereof.
It is further charged, that, in June, 1856, an action of ejectment for the said lands was commenced by the said heirs of said Hopkins, or so many of them as were then known to counsel, against certain parties in possession; and the defendant, Calloway, was admitted in said suit, to defend as landlord. Said ejectment suit is still pending, but the deaths of six of the plaintiffs therein have been suggested.
A portion only of the complainants in this bill are plaintiffs, or the representatives of plaintiffs in the action of ejectment.
It is alleged, that Thomas Hopkins, at his decease, left as his heirs-at-law, five brothers and sisters, and the children of two sisters and a brother, who had deceased before him; and that since his death, his five brothers and sisters, who were living at his decease, *40 have also died, leaving many descendants. The names of a great number of these descendants of Thomas Hopkins, are set- forth as complainants in the bill; and it is charged that those active in the proceeding have not been able to state the names of all the heirs, and the bill is alleged to be filed for the benefit of those heirs not named in the bill, as well as for those who are named. It is charged that it is not possible to prosecute an action at law on account of the great and increasing number of plaintiffs, and the aid of a Court of Equity is sought upon that ground.
The heirs-at-law of Jane Rhodes, one of the sisters of Thomas Hopkins, were made defendants to the bill, instead of complainants, for a reason to be hereafter explained.
The title of Thomas Hopkins, both documentary and possessory, is set forth in detail in the bill, and relied upon as a full and perfect title in him, and through him, in the complainants.
The bill also sets forth in detail, certain entries made by defendant, Calloway, and grants issued to him by the State of Tennessee, and certain occupant claims, alleged to have been transferred to him by other parties — which, it is charged that Calloway relies upon to defeat a recovery in the ejectment suit; and all of which, it is charged, are void, for reasons set forth in the bill.
It is further alleged, that Calloway claims to have had possession of parts of the island at times anterior to his taking actual possession, in 1850; and it is charged *41 that whatever possession he may thus have had, was without color of title, and was merely temporary, and amounted to acts of trespass only.
It is charged that Calloway, as a further defense to said action of ejectment, also relies upon a certain deed, supposed to have been signed by Thomas Hopkins, and which purports to convey the said island to one Charles Rhodes, now deceased, who was the husband of Jane Rhodes, a sister of said Thomas Hopkins; that said deed was never delivered, and is void; and the heirs-at-law of said Charles and Jane Rhodes are, for reasons alleged, estopped to set it up or rely upon it.
The bill prays that Calloway and the heirs of Charles and Jane Rhodes, by name, be made defendants; that an injunction issue, restraining said Calloway from taking any steps in the action of ejectment; that he produce and file all the titles, grants, deeds, occupant claims, or other instruments in writing, under which he claims; and by virtue of which he seeks, to defeat the said action; that he disclose the amount and value of the rents and profits of said lands, received by him, and that an account be taken thereof; that the said grants and other instruments relied on by Calloway, be canceled and declared void, and that he be perpetually enjoined from setting them up in opposition to the rights of complainants; that all leasings, rentings and entrances made upon said lands by Calloway, be declared null and void; that Calloway and all now holding under him, be declared to be trespassers; .and that they be removed from said lands, and the possession thereof restored to the complainants; that Calloway be decreed to *42 pay them the amount of the rents and profits of said lands received by him; that the said deed to Charles Rhodes be declared null and void, and that the said heirs of Rhodes be perpetually enjoined from setting up the same; and for general relief.
The defendant, Calloway, demurred to the bill, showing for cause, that the bill showed no equity; that it appeared upon its face, that the complainants had no title, and that it appeared by the bill that the complainants’ cause of action was barred by the statute of limitations.
The demurrer was overruled, with leave to the defendant to insist upon the matter thereof in his answer.
Calloway then answered the bill, denying the validity of the complainants’ title, and setting up his own title to the lands, and relying upon the defense of the statute of limitations, and upon the grounds of demurrer first filed by him.
The defendant, James H. Rhodes, one of the heirs of Charles and Jane Rhodes, answered the bill, stating that he. found the alleged deed from Thomas Hopkins to Charles Rhodes, among the papers of Hopkins, after his death, and admitting that said Charles Rhodes never purchased said lands. The other heirs of Charles Rhodes did not answer the bill, or appear in the cause.
Depositions were taken, and documentary evidence of title filed, on behalf both of complainants and defendant, Calloway; and an immense mass of evidence on both sides appears in the record.
At the August Term, 1860, of the Chancery Court, *43 there came on to be heard, a motion theretofore made on behalf of defendant, Calloway, that. the complainants be required to elect whether they would proceed with their action of ejectment, or with this cause in the Chancery Court. The Chancellor sustained the motion; and required the counsel for complainants to elect with which of said suits they would proceed; which, said counsel refusing to do, the Chancellor decreed that the bill in this cause be dismissed.
From this decree, the complainants have appealed to this Court.
Aware of the great delay and immense expense incident to the prosecution of this litigation, we have earnestly considered whether we could, in this suit, finally adjudicate and settle the rights of the respective parties, and have been compelled to arrive at the conclusion that we can not do so.
We have no doubt, that, considering the entire frame of this bill, it must be considered as a bill framed for the purpose of obtaining substantive relief in the Chancery Court, and not merely as ancillary to the action of ejectment. It is true, the ejectment suit is mentioned in the bill; but striking out all that part of the bill, would not materially change its aspect. The introduction of new parties complainant, who were not parties, or the representatives of parties to the ejectment suit, shows that it could not have been designed to limit the effect of this proceeding to the removing of obstructions to the operation of a court of law.
It was evidently intended by the pleader, that the entire controversy should be settled and adjudicated in *44 the Chancery Court. The bill alleges that obstacles exist to the prosecution of the suit at law, and prays that the defendant, Calloway, be enjoined from proceeding therein. The title of the complainants, and the supposed title of the defendant, are set forth with the greatest carefulness and detail; and every possible relief is specifically prayed in regard to the validity of these titles, the possession of the premises, and the payment of the rents and profits. And the parties have considered and treated the cause as one in which the entire merits of their titles were to be adjudicated; and the voluminous evidence in the record seems to cover every point in controversy. ,
In this aspect, can the relief prayed by this bill be granted? The defendant, Calloway, demurred to the bill upon the ground that it appeared that the complainants’ cause of action was barred by the statute of limitations.
The validity of this objection must be tried by the statutes in force prior to the time when the Code went into effect, which was May 1, 1858. (Code, §§ 44-47.) The demurrer was overruled, and Calloway answered the bill, and proof was taken in the cause; from which it appears that Calloway entered into possession of the premises in controversy in March, 1850, claiming adversely, and has held possession thereof from that time to the time of the filing of the bill in this cause, in June, 1858.
The statute of limitations applicable to this cause, is the Act of November 15, 1819, Chapter 28; 2 Scott’s Rev., 482.
*45 The first section of that statute, provided in substance, that, any person having' had seven years’ possession of any lands, which have been' granted by this State, or by North Carolina, holding the same by virtue of a deed of conveyance, devise, grant, or other assurance purporting to convey an estate in fee simple, and no claim by suit, in law or equity, effectually prosecuted, shall have been set up or made to said lands, within that'time, then the person so holding possession, shall be entitled to keep and hold in possession, such quantity of land as shall be specified and described in such conveyance or other assurance; and any person who shall neglect to avail themselves, for said term of seven years, of any title, legal or equitable, which they may have to lands, by suit, in law or • equity, against the persons thus in possession, shall be forever barred; and the persons so holding possession for the said term, shall have a good and indefeasible title in fee simple, to such lands.
The second section of the Act of 1819, enacts as follows: “That no person or persons, or their heirs, shall have, sue or maintain, any action or suit, either in law or equity, for any lands, ténements or hereditaments, but within seven years next after his, her, or their right to commence, have, or . maintain such suit, shall have come, fallen, or accrued; and that all suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments, shall be commenced, had and sued, within seven years next, after the title or cause of action or suit, accrued or fallen; and at no time after the said seven years shall have passed.”
*46 In construing the two sections above recited, tbe courts have properly held them to have a diverse effect and operation.
Under the operation of the first section, an adverse possession of seven years, under a deed, grant, or other assurance of title purporting to convey a fee, not only bars the remedy of the party out of possession, but vests the possessor with an absolute estate in fee simple. But the second action bars the remedy only, but does not take away the right, nor confer a title upon the person in possession. The remedy may be barred under the second section, when the possession has not been held under such assurance of title as to vest the absolute estate in the possessor under the provisions of the first section: Wallace vs. Hannum, 1 Hum., 448; Norris vs. Ellis, 7 Hum., 463; Brown vs. Johnson, 1 Hum., 262.
' The action of ejectment in the present case, was commenced before the expiration of seven years from the time when Calloway took possession. It is still pending; and while it is thus pending, the possession of Calloway cannot ripen into an absolute estate: Norment vs. Smith, 1 Hum., 46. But, if that suit should finally terminate in a judgment against the plaintiffs, then, (unless the case is one in which, under the statute, a new suit might be brought,) the suit which had operated as to that suit, thus far to suspend the . running of the statute in Calloway’s favor, would have failed to be “effectually prosecuted,” and the bar of the statute would be immediate under the express terms of the first section.
*47 But, from tlie fact that, pending the suit in ejectment, Calloway’s possession cannot ripen into an absolute estate, it does not follow that, after seven years from the time when he took possession, and while that suit is thus pending, and the effect of the statute in perfecting his title thus neutralized, any other suit can be brought against him in respect of that title or possession ; for the second section enacts, without any reference to the vesting of the title, that no suit at law or in equity, shall be brought, except, within seven years after the right of action accrued.
Under the Act of 1819, section 3, if the complainants had dismissed their suit in ejectment, or suffered a non-suit therein, previous to the filing of this bill, this suit would certainly have been barred by the statute: 3 Hum., 200; 4 Cold., 464; Jones vs. Preston, 3 Head., 161; Norment vs. Smith, 1 Hum., 46. It would work an evasion of the statute to permit them to keep the useless and disused ejectment suit standing in court merely for the purpose of preventing the bar of the statute from attaching to the suit in equity, where all the real litigation was depending.
No provision was made in the Act of 1819, for the commencement of a new suit after the termination of a former one, except in the cases: First, where judgment should be given for the plaintiff, and the same be reversed on writ of error; 2d, where verdict should pass for the plaintiff, and the judgment thereon be arrested; 3d, where the writ should be commenced by original writ, and the defendant could not be legally attached or served with process.
*48 A bill purely ancillary to the suit at law, as a bill for discovery in aid of that suit, might undoubtedly be maintained so long as the suit at law were pending, and whenever the necessity for such a bill should arise. But a bill which seeks to set aside the very title in controversy in the ejectment suit, and to dispense altogether with the necessity for that suit, by having the matter in controversy adjudicated in the Chancery Court, is in no sense, ancillary. In seeking an adjudication upon their own title or that of the defendant, the complainants are seeking to accomplish exactly what might have been accomplished by an original bill, before the ejectment suit was commenced. Such a bill would be barred by adverse possession for seven years, and the mere pendency of an ejectment suit for the same premises, cannot prevent the bar.
We cannot, in this suit, make any adjudication upon the merits of the respective titles of complainants and of Calloway to the lands in question.
. The bill is in all respects one filed for substantive relief; and we are unable to discover any ground upon which it can be maintained as ancillary to the action at law to any extent as against the defendant, Calloway; and as to him the bill must be dismissed without prejudice.
As it appears that the defendant, Calloway, was entitled to have the bill dismissed as against him, for the reasons above given, it is unnecessary to inquire whether the order made by the Chancellor that the complainants be required to elect between the action of ejectment and this suit, was a proper mode of disposing of the case.
*49 The bill is also filed, however, against the heirs of Charles Rhodes, for the purpose of declaring void and setting aside the deed from Thomas Hopkins to said Rhodes.
These defendants have not made any defense to the bill, and the defendant, Calloway, cannot object to the complainant’s proceeding with the cause against those defendants, if they choose to do so.
As to the defendants, the heirs of Charles Rhodes, therefore, the cause will be remanded to the Chancery Court, to be proceeded in.