## GAVIN v. VANCE.

*(Circuit Court, W. D. Tennessee. December 24, 1887.)*

1. REMOVAL OF CAUSES—ACT OF MARCH 3, 1887—CITIZENS OF DIFFERENT STATES —NON-RESIDENT DEFENDANTS.

    Where the suit involves a controversy between citizens of different states, and the federal jurisdiction depends solely on that fact, if the suit be one in which the plaintiff is a citizen of the state in which the suit is brought, and the defendant a non-resident of that state, the latter may remove the case from the state court in which it is brought to the proper federal court, under the act of March 3, 1887.

2. SAME—ORIGINAL JURISDICTION—DISTRICTS IN WHICH SUIT MAY BE BROUGHT.

    While the right of removal may depend on the capacity of the particular federal court to entertain original jurisdiction of the suit sought to be removed, the act of March 3, 1887, permits a plaintiff to sue the defendant in the federal district of his own residence, as well as in that of which the defendant is an inhabitant, when the federal jurisdiction depends only on the fact of a diverse citizenship of the parties, and therefore such a suit is removable by the defendant, if brought in a state court of the plaintiff's own state, as this was. *Yuba County* v. *Mining Co.*, 32 Fed. Rep. 183, considered.

3. SAME—TIME OF REMOVAL—CODE TENN. §§ 5022–5094—EFFECT OF FILING ANSWER.

    Under the provisions of the Tennessee Code, regulating equity proceedings against non-resident defendants, and the equity rules of practice governing those courts, the filing of an answer or plea by the defendant does not abridge the time allowed for removal, and his petition is still in time if filed before the time elapses allowing him to defend the suit. It is the expiration of the time allowed to defend which terminates the right of removal, and not the filing of the demurrer, plea, or answer, under the act of March 3, 1887.

4. SAME—ORDER OF PUBLICATION FIXING TIME.

    If the order of publication be issued under the *attachment* laws, instead of under the sections of the Code regulating chancery proceedings, it can have no effect to foreclose the time of removal, if the suit be of an equitable nature, and the attachment has issued on the fiat of the chancellor. The distinctions in procedure between these two classes of cases must be observed in their relation to the act of congress of March 3, 1887, regulating removal to the federal court.

In Equity. Motion to remand.

*H. C. Warinner*, for the motion.

*C. F. Vance, contra.*

HAMMOND, J. Since the argument of this motion, counsel for the plaintiff has suggested an additional ground for remanding the case, which will be first considered. He cites the case of *Yuba Co.* v. *Mining Co.*, 32 Fed. Rep. 183, and insists that, under the new act of congress of March 3, 1887, (24 St. 552,) this court could have had no *original* jurisdiction of this case, because the defendant Vance, not being an inhabitant of this district, could not have been sued here; and, such being the fact, that the cause cannot be removed under the second section of the new act, which confines the right of removal to those cases of which this court could have acquired *original* jurisdiction under the first section of the act. The case cited seems to hold this, unless there be a distinction between corporations and natural persons in relation to this jurisdiction, that being

a case of foreign corporations seeking to remove their suit into the federal court.

The act is undoubtedly perplexing in its structural arrangement, and very obscure on that account; but a careful analysis of the several provisions brings out its meaning quite clearly, and it is a mistake, in my judgment, to say that this court could not have acquired original jurisdiction of this suit. Without any attention, for the moment, to the mere phraseology of the act, I will state what seems to me its clear purport, and the spirit of the changes in regard to the locality of the suit or *territorial* limitations of the jurisdiction, and the limitations upon the right of removal.

Before this act, under the then existing law, a controversy between citizens of different states could be brought into any federal court where the defendant could be served with process. Thus, to find an example for illustration in the facts of this case, a citizen of Tennessee could sue a citizen of Mississippi, local requirements aside, as in ejectment, in any district where he could find the defendant, whether in Mississippi, where the defendant is an inhabitant, in Tennessee, where the plaintiff himself resides, in New York, or elsewhere. The new act restricts this freedom of selection on the part of the plaintiff, and confines him to *two* districts only,—that of which the defendant is an inhabitant, *and that wherein the plaintiff himself resides.* As to these two the plaintiff has the same freedom of selection that he had before, and may sue his adversary in either whenever he can serve the process. Therefore the plaintiff, Gavin, in this case could have sued the defendant Vance as well in this court as in a federal court in Mississippi, the plaintiff being a "resident" of this district, and the defendant an "inhabitant" of that state.

Again, heretofore, such a controversy as that mentioned between citizens of different states, if brought by suit in a state court anywhere, according to the laws of that state, might have been removed to the proper federal court by *either* party, plaintiff or defendant. Now, under the new act, the plaintiff, having chosen his forum, no matter where, must remain in that forum, and *he* cannot remove at all. But any defendant sued, not in *a court of his own state,* but in the state court of the plaintiff, may always remove, by compliance with the procedure devised for that purpose. If sued in *a court of his own state,* he cannot remove at all, not even under the local prejudice clause of the new act, for, presumably, being in his *home* court, he will be never at any disadvantage as against a foreigner.

Keeping in view these two fundamental considerations governing the jurisdiction over controversies between citizens of different states, as contradistinguished from controversies arising under the constitution and laws of the United States, or the treaties made in pursuance thereof, etc., and remembering always the traditional and historical reason for the existence of that jurisdiction, as one preferable to the state jurisdiction over those same controversies, or, if not preferable, at least rightfully optional, and keeping these fundamental conceptions of the act always together in reading it, and it becomes at once intelligent and intel-

ligible and absolutely consistent, so far as it concerns this class of suits, from beginning to end; but if, wandering among the shattered purposes or designs of former acts, we seek any other spirit for this, and try to interpret it in conformity with the more liberal provisions of that legislation, or as a mere *amendment* of former laws, we are at once lost in a maze of wholly inconsistent phrases, that become meaningless and uninterpretable, according to the rules for construing statutes.

If, for instance, the case above cited has put the proper construction on the act, it renders nugatory, it seems to me, every provision for the removal of this class of cases; nobody being entitled to remove any one of them at all under any circumstances, and only suits in which the jurisdiction depends upon the subject-matter of the suits, and not the diverse citizenship of the parties, are removable; for there is nothing plainer in the act than the intention that a defendant sued in his own state court shall not remove the case. If *he* cannot, and citizens of other states made defendants in a state court cannot, as that case is thought to hold, who can remove? And, if neither of these, then why put any provision in the act for the removal of such suits at all? This seems conclusive to me against *that* interpretation of the act, if what is there ruled as to *corporations* is to be applied to natural persons, and whether it be a proper construction, even as to corporations, need not be now determined.

The former legislation had pushed the jurisdiction of the federal courts almost to the very verge of the *constitutional* grant, but this reactionary legislation returns, in deference to the local jealousy of the states, to that policy of restriction which entered so largely into the structure of the original act of 1789, consequent upon the struggle to form any union at all, from which its projectors had just emerged. Yet, notwithstanding this manifestly restrictive policy, the new act should be judicially treated, so far as it goes, as other voluntary legislative grants of jurisdiction are, and nothing should be implied, as some of the cases considering the act seem to suggest, from those restrictions themselves, which is inconsistent with the rule of a liberal construction in furtherance of the accomplishment of the designated purpose of the congressional grant, whatever that purpose be. Here there is a manifest intention to afford such protection as is assumed to be found in the federal jurisdiction to every nonresident defendant sued by his adversary in the home courts of that adversary, against any possible partiality in those courts.

Turning, now, to the phraseology of the act, let us examine it in relation to this character of suit, where the jurisdiction is dependent *only* on the diverse citizenship of the parties. And first as to the original jurisdiction which this court might have acquired over this suit, does not the act in its first section say in so many words "but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought *only* in the district of the residence of *either* the *plaintiff* or the defendant?" It is said in the case cited that this clause is "prohibitory in form" and "does not *enlarge* the jurisdiction, or confer jurisdiction in a case otherwise expressly prohibited." It is, indeed, prohibitory, or rather restrictive, in form, and possibly

does not *enlarge* any previously granted jurisdiction; and yet it is not as prohibitory or restrictive as the statement suggests; and that is the real question,—How far does the prohibition or restriction go? The provision of the act, which is said not to have been enlarged, is in these words: "And no civil suit shall be brought before either of said courts against any person by any original process of [*sic*] proceeding in any other district than that whereof he is an inhabitant." Now, this prohibition has been in every act from 1789 down, and yet the jurisdiction was in fact *enlarged*, notwithstanding that prohibition in the original act, by the very next clause, which reads, "or in which he shall be found at the time of serving the writ," (1 St. 79;) and, likewise, it was enlarged in the act of 1875 by the next clause thereto, which reads, "or in which he shall be found at the time of serving such process or commencing such proceeding, except as hereinafter provided," (18 St. 470;) and so there was an extension of the privilege of the plaintiff to sue in other districts than that whereof the defendant was an inhabitant, until we had that freedom of selection of a district in which to sue that has been already described.

If these clauses could enlarge the jurisdiction in those acts, notwithstanding the leading prohibition, why cannot the new clause of the new act enlarge it to the extent indicated of allowing the plaintiff *two* districts only, instead of so many as he had before? But the fact is, this new clause assumes a prohibitory, or more properly a restrictive form, because the new act is in form *amendatory*, and the language is seeking to restrict the broad permission of former acts to sue the defendant wherever found; but *non constat* that it goes as far in its prohibition as the case cited seems to hold that it does. The other language quoted from the new act must have effect, and the plaintiff be thereby permitted to sue "*in the district of the residence of either the plaintiff or the defendant.*" Such words as these cannot be discarded because of the mere form of the clause. The form of the whole statute is unfortunate; for it would have been better understood, if it had been in form, as it is in fact, a *new* act, instead of a mere patch-work amendment of the old statute. We have by the opening clauses of the first section the most absolute jurisdiction of "*all* suits of a civil nature, etc., in which there shall be a controversary [*sic*] between citizens of different states, etc." The subsequent restrictive clause as to the locality of the suit, already quoted, is itself subsequently qualified so that the joint product of the two is entirely within this primary grant of jurisdiction, and hence there is no kind of *enlargement* necessary. The clause forbidding suits "in any other district than that whereof he (the defendant) is an inhabitant" should be read as if the next clause were introduced as a *proviso*, which it clearly is.

It seems to be conceded that, if we could have had original jurisdiction of this suit, we may acquire it by removal on the terms and under the restrictions of the new act. At all events, if the above view be correct, this case comes within the clause of the second section which limits the jurisdiction to suits "of which the circuit courts of the United States are given jurisdiction by the preceding section." But there is a further restriction which points out the defendant here as the very char-

acter of party, and the only kind of party, who could remove, namely, "the defendant or defendants therein, *being non-residents of that state*,"— that is to say, of the state in whose court the suit is brought. If the parties had been reversed, and Vance had brought this suit—one embodying his side of the same controversy—in the state court of this state, as he might have done, *he* could not have removed it here, although we might have had *original* jurisdiction of it, because, being plaintiff, and having selected his own forum, he must abide there; and so Gavin, who would then be the defendant, could not remove it, although we might have had *original* jurisdiction, because, being in his own state court, he is compelled to remain there by the restrictive language last quoted from the second section of the new act; and, to show this more clearly, the identical prohibition on any removal by him reappears even in the subsequent local prejudice clause, thus: "In which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, *being such citizen of another state*, may remove," etc. On the other hand, if Vance had caught Gavin in Mississippi, he might have sued him originally in the federal district in which he himself resided, or, suing him in a state court there, Gavin could then have removed the suit to the proper federal court, but Vance could not. Moreover, the primary grant of jurisdiction contained in the first clause of the first section—to which it is possible the removal section refers, rather than to the more restricted clause relating to the *locality* of the suit—is of the most extensive character and broad enough to give the court jurisdiction by removal of any suit between citizens of different states brought in a state court, although the locality might not be available for *original* jurisdiction of the federal court under the subsequent restrictive clauses of that first section. So that the restrictions of locality as to suits originally brought may not apply to the jurisdiction by removal at all. In other words, we must look alone to the restrictions of the removal section for the qualifications of that jurisdiction and treat those relating to the *locality* of original suits as wholly inapplicable to the entirely different subject of jurisdiction by removal. Whether this be a proper construction we need not say, but it is neither impossible nor improbable, nor yet an unreasonable construction.

It is certainly those suits, in this branch of the jurisdiction, brought in the residence of the plaintiff, that can be removed by the defendant residing in another state. It is certainly those suits, in this branch of the jurisdiction, brought against a defendant in his own state courts, which neither he nor the plaintiff can remove. It is just as certain that the plaintiff, bringing the suit in his own state or any court, cannot remove it. And all this because there is no just cause to complain of any danger of partial treatment as between a state's own citizens and those of another state; and, in the case of the plaintiff, if there be any such cause, he has chosen that forum and should stay there. Because neither plaintiff nor defendant could have such just cause of suspicion or complaint, it is that no especial provision seems to have been made for removal where the suit is brought in the court of a state where neither of them resides, and

that that class of cases may be excluded from the jurisdiction by removal, as they are from jurisdiction by original process. On the whole, it is my opinion that this is the proper construction of the act, and one that clears its meaning in relation to this particular suit, and shows that it is removable.

But another and more formidable question is presented by the objection that the petition for removal was not filed in time, under the requirements of the third section of the new act. The limitation in that regard is in the following language: "That whenever any party entitled to remove any suit," etc., "may desire to remove such suit from a state court to the circuit court of the United States, he may make and file a petition in such suit in such state court at the time, or at any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff," etc. 24 St. 554, § 3.

The petitioner, being a citizen of the state of Mississippi, and non-resident here, was sued in the state court by process of publication only, upon an attachment of his property in the chancery court, by an order of the chancellor to that effect. The suit is in the nature of an action of ejectment and for rents and profits, involving a controversy over a leasehold, which, according to our peculiar Tennessee practice, may be considered "of an equitable nature," in the purview of our Code, giving the chancery court jurisdiction "in all cases of an equitable nature." M. & V. Code Tenn. § 5022 *et seq.* Strictly taken, it might be treated as a suit of legal cognizance; yet it is familiar to our chancery practice as "an equitable action of ejectment." It might possibly have been brought under our attachment laws as an action of debt for the rent, but in combination with a demand for the possession of the land, the appointment of a receiver, and a prayer for attachment, it assumed the equitable form already mentioned, and was not brought under the attachment chapter of the Code at all, but under that regulating proceedings in the chancery court, and the attachment issued upon the fiat of the chancellor in pursuance of sections 5030 and 5032, M. & V. Code Tenn., and not in pursuance of section 4192. Yet, the clerk of the state court, erroneously supposing that it issued under the latter section, gave notice under the attachment chapter, referring in his notice to that section, using, possibly, the printed blank appropriate to that proceeding.

Now, in view of the language of the act of congress above quoted, there are most important distinctions between the procedure appropriate to a suit commenced by original attachment and one commenced by process of publication and equitable attachment, as this was. It is not necessary to detail all the essential differences in this place, though a careful reading of the whole chapter relating to each class of cases is useful in demonstrating the importance of not confusing them, as the clerk of the state court has done, when considered in their relation to a motion like this, arising under our act of congress. The fact that there is an attachment in either class of cases is naturally confusing; but care must be used in practice to distinguish the mode of procedure appropriate to each class, where the question depends, as it does here, wholly upon the mode

of procedure. If the defendant appear and answer, it cures every defect in the state court, and the distinctions perhaps are no longer important; at least, they may not be there, but, in bringing the case here and on a motion to remand, this curative quality is wholly wanting to aid us in the determination of the motion. Hence, it may be well enough in the beginning of our practice under the new act of congress to take warning that any confusion of the two classes of procedure does seriously affect the limitation of time within which a removal to a federal court may be made.

Under the *attachment* laws, the officer granting the attachment may, at the time of issuing it, direct that when it is levied publication be made, requiring the defendant "to appear at a time and place to be mentioned in such publication," and defend the action. M. & V. Code Tenn. § 4259. If not so made, the clerk of the court may make such order "at any time thereafter." Id. 4260. Here the time is fixed by the order, and by that alone, unless the rules and practice of the court, whether especially prescribed or growing up by mere practice, control the discretion of the officer in appointing the time. Other provisions follow, not necessary to mention particularly, and then it is provided that the attachment and publication shall be in lieu of personal service, and the plaintiff proceeds as if the suit had been commenced by summons, while the defendant, if he "appear in time," may make defense, as if the suit had been commenced by personal service of process. Id. §§ 4265, 4267. If, however, the defendant do not appear, there may be a judgment by default, as upon personal service; but if the attachment be sued out because the defendant is a non-resident, there shall be a stay of final judgment of not less than six months, nor more than twelve, and any judgment by default may be set aside within twelve months, on cause shown, and defense permitted upon such terms as may be imposed. Id. 4268–4270. It should have been remarked that this character of suits may be brought in any court of law or equity, although of purely legal cognizance, and not infrequently, if not most often, is in fact brought by bill in the chancery court.

Under the laws regulating *proceedings in chancery*, "in all cases of an equitable nature," the procedure is different from that above described. M. & V. Code Tenn. 5022 *et seq.* The chancellor, as was done in this case, must grant a fiat for any attachment or other extraordinary process. Id. 5030, 5032, 5054, subsec. 5, 5088. Subpœna issues on filing the bill, and, if served five days before its return-day, which may be any rule-day, the defendant must "appear" within the first three days of the term, or, if less than five days, on the first day of the second term. Id. 5082–5094. This, supplemented by chancery rule 11, and under the established practice, means, not only that the defendant shall "appear" in the technical sense known to a court of equity, but also that he shall "make defense" by filing his demurrer, motion, plea, or answer, "or obtain time therefor within the three successive days;" that is to say, within three days after the first day of the term, or such other Monday of the term as may have been designated under that chancery rule. Id. p.

1209. And likewise this rule by its section 3 prescribes the same practice on publication for a defendant. Id.

Now, then, by the next article of the chapter, the Code prescribes that where the defendant is a non-resident, and the fact is stated on oath in the bill, or by affidavit, "if the defendant does not cause his appearance to be entered," the clerk "shall enter upon the rule docket an order requiring the defendant to appear at a certain day therein named, being a rule-day, and defend, or the bill will be taken for confessed." Id. § 5097. The clerk is required forthwith to cause "a copy of this order" to be published in a newspaper for four weeks, and subsequent sections direct what it shall contain, and how the publication shall be proven. Id. 5098–5102. The plaintiff may compel an answer by proceeding for contempt, or he may proceed in default of answer by *pro confesso* to a final decree. Id. 5103–5126. But "a non-resident defendant, who is not served with process, may appear and defend *at any time before final decree,* as of course." Id. 5119. Then comes a provision, very important here, that cases brought under the *attachment* laws, heretofore referred to in this opinion, in the chancery court, shall be governed by that chapter on attachment in relation to the effect of a judgment by default; showing clearly that the Code itself seeks to prevent a confusion of the two classes of cases. Id. 5121. And, in all other cases, that is to say, in all cases brought in the chancery court that are not commenced under these *attachment* laws, a decree against a defendant does not become absolute for three years from the decree, unless, on service of a copy of the decree, it becomes absolute within six months after service. Id. 5122.

In this case, belonging to the second class of cases above distinguished, the clerk proceeds as if it belonged to the other or first class, and gives notice accordingly. He does not follow the directions for procedure as prescribed in the Code, §§ 5097–5102, as he should have done, but those prescribed in sections 4192 and 4259–4265, as he should not have done. It does not matter that in this case each method of procedure would or might have produced precisely the same result so far as the time appointed is concerned, if for no other reason, because a different time might have resulted but for the mere accidents of this case. Pursuing the attachment chapter, he gave notice under Code, § 4260, to appear "on the first Monday in June next," and published the order in a newspaper. The fact that this might have been, and probably was, a rule-day of the chancery court, and that, if he had pursued the other sections, (5097–5100,) by entering "on the rule docket" an order requiring the defendant to appear "on a rule-day" to defend the suit, and publishing "a copy of that order" in the same newspaper for the same time, he would or might have fixed the same day and published substantially the same notice, is only a factitious circumstance. He might under the attachment laws have designated any other day as well; and probably because the suit was in a chancery court he fixed a rule-day, according to that practice, exercising his power to fix the day under section 4260. But the distinctions pointed out show that we must not be misled by such

confusion of identity in results, at least so far as this act of congress is concerned in fixing a limitation upon the time of removal. One has only to read and contrast the two modes of procedure to show that, so far as they enter into this removal act of congress, they must be kept distinct. Therefore, the order of the clerk given under the attachment laws, as he recites, cannot be taken as his order entered on the rule docket under the chancery practice. In the one case the defendant's time "to answer or plead to the declaration or complaint of the plaintiff," as described in the act of congress, expires absolutely and forever "within twelve months" after judgment or decree by default, under the operation of sections 4270 and 5121 of the Code of Tennessee, and may be even sooner terminated by the refusal of the court to open the case; while, in the other, it does not expire for three years, under the operation of section 5122 of that Code. In the one case he may appear and defend at any time before final decree, and in the other he has only a stay of six or twelve months, etc. M. & V. Code Tenn. §§ 4268, 5119.

I am of the opinion, therefore, that we need not and should not now decide whether a notice fixing a day for the defendant to appear and make defense, issued under the attachment laws, imposes a limitation upon the time of removal under this act of congress, or whether he may, notwithstanding the notice, remove at any time before the expiration of the 12-months indulgence allowed under section 4270 of the Code, because this is not a case arising under the attachment laws at all, and the notice so issued by the clerk has no effect on the right of removal. Also I am of the opinion that we need not and should not now decide whether the publication of an order entered upon the rule docket under sections 5097–5102 of the Code, regulating proceedings in the chancery court in "cases of an equitable nature" commenced under sections 5023 and 5030, as this was, imposes any limitation upon the time of removal, or whether the defendant may, notwithstanding such rule, remove at any time before final decree, because of the indulgence of section 5119, or before the expiration of the further indulgence of three years granted by section 5122 of the Code, because, while this case belongs to that class of cases, no such rule has ever been entered on the rule docket, or publication been made, so far as this transcript shows.

Furthermore, I am of the opinion that the filing of a defendant's answer in no way affects his right of removal by imposing any limitation of time upon it, under this act of congress. The original judiciary act of 1789 did require that the defendant proposing to remove a case should file his petition "at the time of entering his appearance in such state court;" and under that act the right of removal was gone after any plea or answer was filed. Act 1789, c. 20, § 12; 1 St. 79. But this act uses entirely different language. It does not at all say that the petition shall be filed the first thing that is done on appearance. The conduct of the defendant is not referred to in defining the limitation of time, nor is any act of his designated as fixing the terminal point. The laws of the state and the rules of the court determine the time by fixing a period when his right to answer or plead terminates. To illustrate, it is a familiar law and rule

of court or practice in cases at law that the plaintiff has the first three days of the term to file his declaration, and the defendant two days thereafter to plead, etc. Now, often the plaintiff files his declaration before the term commences, and the defendant pleads immediately, or it is all done on the first day; and, surely, such a premature and voluntary action cannot be said to close the right of removal under this act of congress, but the expiration of the two days allowed the defendant to plead would close it, perhaps, whether he actually did plead or did not. Hence, in this case, the fact that the defendant filed his answer did not terminate his right of removal; for we have seen that he had under the chancery rule 11, already cited, three days after the first Monday in June to file his answer, even conceding that the published notice was binding on him, which it was not, and he actually answered May 16, 1887. His petition for removal was not filed until July 18, 1887, after the expiration of *that* three days; but at the very most it could not have been barred until those three days had expired, although the answer had been filed, unless we hold that the filing of the answer hastened the bar of the statute; and this would be to import an altogether new element of limitation into the statute, which we cannot do. The filing of the answer, therefore, has no effect upon the question.

There being no order upon the rule docket fixing a rule-day, and no publication of a copy thereof requiring the defendant to appear and defend, there has been, in this case, by the provisions of the Code and rule 11 of the chancery rules, no three days fixed within which the defendant was required to answer or plead to the bill, and there can, therefore, no limitation arise out of *those* "laws of the state or rules of the state court," and his petition was in time. If such a limitation upon the right of removal had been attempted by proper order and publication, whether it would have been effectual in view of the other provisions in the Code extending the time of defense we need not.now inquire. Motion overruled.