## ATLANTA, K. & N. RY. CO. v. SOUTHERN RY. CO.

### (Circuit Court of Appeals, Sixth Circuit. August 2, 1904.)

#### No. 1,303.

1. REMOVAL OF CAUSES—WAIVER OF RIGHT—FILING ANSWER AND MOTION TO DISSOLVE INJUNCTION.

The filing by a defendant in a state court of an answer and a motion, supported by affidavits, for the dissolution of a preliminary injunction or restraining order which had been granted ex parte, and the hearing of such motion on ex parte affidavits by the judge in chambers, where he had no power to determine any question on the merits, do not preclude the defendant from removing the cause where his petition therefor was presented before the time when, by the laws of the state or the rules of the court, he was required to plead.

2. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—EFFECT OF UNAUTHORIZED ENTRY.

Shannon's Code Tenn. §§ 1844–1867, providing for the condemnation of right of way by railroad companies, do not authorize an entry on the land without consent of the owner until his compensation has been ascertained and either paid or secured, unless, perhaps, for the purpose of making a survey; and a company can acquire no rights by going upon the land and commencing construction work without the owner's consent after it has filed a petition for condemnation.

3. SAME—PRIORITY OF RIGHT—UNRECORDED CONVEYANCE.

A statutory proceeding for the condemnation of right of way for railroad purposes is but a substitute for its acquisition by contract, and the filing of a petition for condemnation by a railroad company gives it no right as against another company, which previously obtained a deed from the owner for the same purpose, although such deed was not recorded, and especially where, as by the Tennessee statute, it is expressly provided that such proceedings shall affect only the interests of the parties thereto and unborn remaindermen, and the grantee company is not a party.

4. SAME—PRELIMINARY SURVEY.

There being no statute in Tennessee requiring a survey before the institution of proceedings to condemn right of way for railroad purposes, or authorizing the recording of surveys, such a survey gives no priority of right as against another company which subsequently acquires right of way over the land by conveyance from the owner.

5. SAME—EXECUTORY CONTRACT—STATUTE OF FRAUDS.

A contract for the sale or conveyance by a landowner of right of way to a railroad company, although in parol and executory, is good as against another company which subsequently institutes proceedings for condemnation of the same land, with notice that such an agreement had been made, such company not being an innocent purchaser protected by the statute of frauds.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

John B. Keeble (Chas. N. Burch, of counsel), for appellant.

R. H. Sansom, Leon Jourolmon, Henry Hudson (W. A. Henderson, Alex P. Humphrey, and Jourolmon, Welcker & Hudson, of counsel), for appellee.

Before LURTON and SEVERENS, Circuit Judges, and EVANS, District Judge.

¶ 1. See Removal of Causes, vol. 42, Cent. Dig. § 10.

LURTON, Circuit Judge. This is an appeal under the seventh section of the Court of Appeals Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550], from an interlocutory decree granting an injunction pendente lite. The controversy is between two antagonistic railway companies over a right of way across the same property, desired by each for the purpose of constructing and operating a spur track to reach certain manufacturing industries upon the south bank of the Tennessee river, in the vicinity of Knoxville, Tenn. For some time before this litigation these industries had been endeavoring to secure such a spur track, and had been negotiating with both companies to that end. The evidence tends to show that the only practicable approach for either company was over a narrow strip of land lying between the river and the base of a bluff, the property of one S. B. Luttrell. This narrow strip between the bluff and the river is insufficient for two independent railway approaches, even if it had been desirable and profitable for each company to own and operate a spur for its own use. Negotiations were proceeding upon the basis that the right of way across Luttrell's land, as well as for other parts of the route, would be secured by the industries to be served and donated to the railway company with whom an agreement should be finally concluded. The evidence tends to show, however, that the appellant company was understood as also requiring that the expense of grading should be borne by these industries. Preliminary surveys were made by each company, but the Southern Railway Company first came to an agreement, and first made a location definite and final. This agreement seems to have been concluded, though possibly not fully executed until a day or two later, on June 29, 1903. By the terms of this agreement the industries agreed to procure the necessary rights of way and the railroad company to grade, construct, and operate the desired spur. Upon the next day— June 30th—several rights of way were secured, including the right of way over the Luttrell property, now in dispute. As early as this date— June 30th—if not earlier, the appellant company heard disquieting reports that the Southern Railway Company had come to an agreement under which it was to construct the spur in question. Its own plans and purposes do not seem to have been definite prior to this, for only on this day did the company's engineer file in the office of Mr. Ellis, the company's general manager, the plans and estimates upon which a final conclusion could be reached and a proposal made to or accepted from the manufacturing companies to be accommodated. On the next day —July 1st—Mr. Ellis began inquiries with a view of ascertaining the truth of the reported agreement with the Southern Railway. As this matter of notice to the appellant of the steps taken by the Southern Railway to acquire a right of way from Luttrell may be of importance, we quote from the ex parte affidavit of Mr. Ellis, who, after stating that on June 30th, and while absent from the city of Knoxville, the company's engineer had filed in his office the completed survey and estimates for a spur track, says:

"On the following day (July 1st) I began the preparation of a report and letter to President Smith, but, having various outside intimations that there might be some truth in the reported negotiations with the Southern Railway Company, on the first day of July I called upon Mr. Gaut, and asked if he knew

what the facts were, and inquiry by him developed the fact that an agreement had been reached, although perhaps not executed, by the parties with the Southern Railway Company. I then addressed a letter to President Smith, setting out the facts, and received telegraphic authority to proceed. * * *"

The Mr. Gaut referred to above had, on some former occasions, endeavored to bring about an agreement between the appellant railroad and these industries. In a brief affidavit Mr. Gaut says that on July 1, 1903, Mr. Ellis called on him "to ascertain whether the newspaper reports that a contract had been signed between these companies and the Southern Railway Company were correct or not. I made inquiries concerning the matter at once, and learned that, while the conveyances for right of way had not been executed, the agreements had been reached whereby they were to be executed." After receiving authority to construct a spur according to this survey, and without further effort to come to any agreement with the enterprises to be served, and wholly independent of any assistance from or agreement with the parties desiring the spur, the appellant company, on the night of July 2, 1903, began operations to secure priority of right over the Luttrell property, knowing at the time that at least a parol agreement had been already concluded by the defendant company for the rights of way essential to the construction of a spur over the same route. The supposition that possibly the right of way over Luttrell's land had not been conveyed by an instrument in writing proved to be erroneous, for the evidence tends to show quite satisfactorily that on June 30th Mr. Luttrell executed and delivered his deed, though it was not placed on record until July 3d.

To secure priority of right over the Luttrell land, notwithstanding the situation as confessedly known, and to obtain what advantage there might be, in view of the possibility that deeds for the right of way had not been executed, the complainant company, on the night of July 2d, filed a petition in the state circuit court for Knox county, Tenn., against S. B. Luttrell, seeking to condemn the right of way now involved, and being the same previously conveyed by the unrecorded deed of the owner. On the same night, and before service of process or notice or knowledge of either Luttrell or the Southern Railway Company, a civil engineer in appellant's service, with a small force, went upon the proposed right of way for the alleged purpose of taking possession and beginning the construction of the proposed track. Knowledge of this latter step was obtained by the Southern Railway Company, and very early in the morning of the 3d of July it also sent a force of men upon the Luttrell property, and began at once the construction of a track, claiming a right to do so under Luttrell's grant and conveyance. On the same morning, and after this movement in the interest of the Southern Railway Company, the appellant company filed the present bill in the Chancery Court of the state, and obtained an ex parte injunction restraining the defendant company from interfering with its alleged prior right and prior possession. Upon the same day, but at a later hour, the defendant filed a similar bill in the same court, and was also granted an ex parte injunction. Thus both companies were forbidden to proceed with the construction of the said spur across the land of said Luttrell until the court should determine which had the better right. Answers were at once filed to each bill, and ex parte affidavits taken

and filed, under consent and agreement, to be used upon motions to dissolve the injunctions granted. The two cases, on July 11, 1903, were heard at the same time, upon motions to dissolve. The chancellor denied the motion to dissolve the injunction granted under the bill of appellant, and sustained the motion to dissolve the injunction granted under the bill filed by the appellee company. On August 1st the Southern Railway Company dismissed its said bill without prejudice, and removed the case of the appellant company into the court below. A motion to remand to the state court was seasonably made by the appellant company, and denied. The defendant, under leave, filed a cross-bill, seeking affirmative relief against the occupation of the right of way in question by the Atlanta, Knoxville & Northern Railway Company, and asserted its own exclusive rights under the deed of Luttrell. Subsequently the cause was heard upon a motion to dissolve the preliminary injunction granted by the state chancellor, and to allow a pendente litem injunction under the cross-bill. Both these motions were granted, and from the order allowing an injunction upon the said cross-bill this appeal has been taken.

1. It is first insisted that, although this suit was one which might have been removed by the Southern Railway Company into the circuit court, the right to remove was waived by the proceedings which occurred in the state court before the petition to remove was filed. The question is one which goes, in a sense, to the jurisdiction of the court below, and, although this is only an appeal from an interlocutory injunction, should be decided before considering the merits. Bissell Co. v. Goshen Co., 19 C. C. A. 25, 72 Fed. 545; Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810; In re Tampa R. Co., 168 U. S. 583, 18 Sup. Ct. 177, 42 L. Ed. 589. The provision of Act March 3, 1887, c. 373, § 1, 24 Stat. 552 [U. S. Comp. St. 1901, p. 510], as amended by Act Aug. 13, 1888, c. 866, § 3, 25 Stat. 433 [U. S. Comp. St. 1901, p. 510], in respect to the time for the removal of a cause, is that the party entitled to remove shall file his petition in such suit in the state court "at the time, or any time before, the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff." This means that a petition for removal must be filed as soon as the defendant is called upon by the local law to make any defense, either to the jurisdiction or merits. Martin v. B. & O. R. Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311. But under the state law the earliest day at which the Southern Railway Company was obliged to make any defense whatever to the bill of the Atlanta, Knoxville & Northern Railroad Company was upon the first rule day in August, which was Monday, August 3d. The petition to remove was filed August 1st. It therefore follows that the petition for removal was filed within the time required by law. But it is said that, although the petition was filed before any defense was due, and therefore within time, the right to remove had been waived by the filing of an answer and by the hearing had in the state court upon the question of the dissolution of the ex parte preliminary injunction granted upon the filing of the bill. The citizenship of the parties was such as to bring the case within the constitutional jurisdiction of a United States court. The time of removal

was not of the essence, and any objection for failure to remove within the time required by the statute must be made promptly, or the right to object for that reason is lost. Newman v. Schwerin, 61 Fed. 865, 10 C. C. A. 129; Martin v. B. & O. R. Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311. Upon the same line of reasoning a defendant should not be deprived of his constitutional and statutory right to a trial in a court of the United States upon the ground of waiver unless a clear case of intent to submit and have a hearing in the state court is made to appear. The mere filing of any answer or plea or any other defense before it is due under the law or rule of the state court is not inconsistent with the subsequent removal of the case. The premature filing of a defense is in no sense a trial or hearing, and is not conduct establishing a waiver of the right to remove. The statute does not require the petition to be filed before any defense is filed, but only before the time when the first defense is required to be filed. Gavin v. Vance (C. C.) 33 Fed. 84; Conner v. Coal Co. (C. C.) 45 Fed. 802; Duncan v. Associated Press (C. C.) 81 Fed. 417–422; Champlain Const. Co. v. O'Brien (C. C.) 104 Fed. 930.

This brings us to the question as to whether the hearing in the state court upon the motion to discharge the ex parte preliminary injunction should operate to defeat the right to remove, although the petition was filed within the time prescribed by the statute. In view of the fact that the law requires the petition to remove to be filed on or before the time when the first reading by the defendants may be required, it may be inferred that Congress did not intend to allow a removal after the trial of the case, or any question in the case, even though such trial should occur before the time when the first defense was due under the law. Under Act March 3, 1875, c. 137, § 3, 18 Stat. 470 [U. S. Comp. St. 1901, p. 510], which allowed a removal at or before the time at which the case could be first tried, "and before the trial," it was held that a hearing upon a demurrer was a trial of the action within the meaning of that act. Alley v. Nott, 111 U. S. 472, 4 Sup. Ct. 495, 28 L. Ed. 491. In Removal Cases, 100 U. S. 457, 473, 25 L. Ed. 593, it was held that, if the trial had actually begun before the application to remove, the right of removal was gone, though there had been no judgment. The court in that case said that Congress did not intend by the expression "before trial" to allow a party to experiment on his case in the state court, and, if he met with unexpected difficulties, stop the proceedings, and take his suit to another tribunal. If there was any hearing of the appellant's case, or if any hearing was begun, though no judgment had been rendered, before the filing of the petition to remove, the right to remove may well be regarded as waived, the hearing concluded or begun being inconsistent with the clear purpose of the act that the removal shall occur before any such experimenting with the state court. The question, then, to be decided is whether by the filing of an answer and by the hearing which did occur before the petition to remove was filed the right of removal was waived or lost. This hearing, which was had before the removal, was upon a motion to dissolve a preliminary injunction which had been granted without notice. In effect, it was neither more nor less than a motion for an injunction pendente lite, for the injunction allowed was without notice, and nothing more than a restrain-

ing order to stand until there could be a hearing upon notice of the question of the allowance of an injunction to preserve the status until a final hearing. The question to be decided was whether there was a probable right which might be jeopardized unless an injunction should preserve the status until a final hearing. It is a question which largely appeals to the discretion of the chancellor, regulated by the balance of inconvenience or danger to the parties. Flippen v. Knaffle, 2 Tenn. Ch. 238; Blount v. Societe, etc., 53 Fed. 98, 3 C. C. A. 455, 457; Glascott v. Lang, 3 Mylne & C. 451, 455; Grt. Western Ry. Co. v. Birmingham & O. J. Ry. Co., 2 Phil. Ch. 602; Allison v. Corson, 88 Fed. 581, 32 C. C. A. 12.

In Blount v. Societe, etc., cited above, Jackson, Circuit Judge, speaking for this court, said:

"The object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined upon strictly legal proofs and according to the course and principles of courts of equity."

In Grt. Western R. Co. v. Birmingham R. Co., cited above, Lord Cottenham said:

"It is certain that the court will in many cases interfere and preserve property in statu quo during the pendency of a suit in which the rights to it are to be decided, and that without expressing, and often without having the means of forming, any opinion as to such rights. It is true that the court will not so interfere if it thinks there is no real question between the parties; but, seeing that there is a substantial question to be decided, it will preserve the property until such question can be regularly disposed of. In order to support an injunction for such purpose, it is not necessary for the court to decide upon the merits."

Under the practice in the chancery courts of Tennessee, as stated by so eminent an equity judge as Chancellor Wm. F. Cooper, in Owen v. Brien, 2 Tenn. Ch. 295, the chancellor, though sitting in open court, will not ordinarily decide any matter upon its merits upon a motion to allow or dissolve a temporary injunction. But the hearing in this matter was not in open court, but at chambers, and the chancellor has at chambers no power to decide any cause upon its merits, unless it be a hearing by consent of some of the matters provided for by the Tennessee act of 1903, p. 577, c. 248; Shannon's Tenn. Code, 6220, 6223. A motion to dissolve or allow a mere temporary injunction is a matter which could always be heard at chambers, and the jurisdiction of a Tennessee chancellor at chambers in respect of such motions is not enlarged or regulated by the act cited. The hearing in this cause could not have been a hearing upon the facts, for the motion was heard only upon the bill, answer, and ex parte affidavits. Such affidavits are not legal proofs, and are admissible only for the purpose of guiding the discretion of the chancellor in allowing or disallowing a preliminary injunction. That the learned chancellor expressed opinions which bore upon the merits is of no moment, for he could do no more, and was called upon to do no more, than decide whether, upon such a prima facie showing, the complainant had a probable right which should be preserved until a hearing upon legal proofs and according to due course of equity could be had. To that extent the hearing before him at chambers went, and no further. The same motion might have been renewed

again and again, for the matter was not concluded by the disallowance of the motion made. Having regard to the fact that the hearing had was before a judge in chambers having no jurisdiction to hear the cause upon the facts, and upon ex parte affidavits, we conclude that the refusal of the court to discontinue the pending preliminary injunction was not a hearing upon the merits, nor the trial of the suit upon any question affecting the merits, and therefore not such a hearing as will defeat the right of removal. The question presented by the facts stated has not been authoritatively decided by the Supreme Court nor any of the Circuit Courts of Appeal. The decisions in the Circuit Courts are not altogether harmonious, but the decided weight of authority lends support to the conclusion we have reached. Gavin v. Vance (C. C.) 33 Fed. 84; Freeman v. Butler (C. C.) 39 Fed. 1; Garrard v. Silver Peak Mines Co. (C. C.) 76 Fed. 1; Duncan v. Associated Press (C. C.) 81 Fed. 417–422; Purdy v. Wallace Muller Co. (C. C.) 81 Fed. 513; Whitley v. Malleable Castings Co. (C. C.) 83 Fed. 853; Champlain Con. Co. v. O'Brien (C. C.) 104 Fed. 930; Sidway v. Missouri Land Co. (C. C.) 116 Fed. 382.

2. Did the district court abuse its discretion in denying a preliminary injunction to the Atlanta, Knoxville & Northern Railroad Company and awarding one to the Southern Railway Company upon its cross-bill? The contention is that the appellant, the Atlanta, Knoxville & Northern Railroad Company, acquired a priority of right to an easement of way across the land of said Luttrell by reason of the filing of its petition for a condemnation before the deed of Luttrell was put to record. It is true that the learned counsel have also laid some stress upon an alleged prior survey and location. But, as already indicated, we do not find, upon the present state of the record, that this claim is substantiated. Preliminary surveys were made by both companies, and it may be that the first preliminary reconnaissance was made by the appellant company. But the weight of evidence is that the Southern Railway Company completed its survey and location first, and first definitely determined upon the construction of the spur in question. It was only after the appellant company learned, through the press and by reports, that the Southern Railway Company had concluded an agreement with the establishments to be reached by the proposed spur that the complainant company definitely determined to build a spur, regardless of any agreement with the people with whom it had been negotiating. Neither do we attach any importance to the fact that on the night of July 2d, and after the filing of the condemnation proceedings, the appellant company placed a force of men at work upon the disputed premises. This it did without the consent or knowledge of either Mr. Luttrell or the Southern Railway Company, and without the slightest semblance of legal authority or moral right. The mere fact that it had theretofore surveyed a line across Mr. Luttrell's property, and had started condemnation proceedings, gave it no right to take possession without the consent of the owner, and in advance of a condemnation. The Tennessee statute regulating the taking of private property for public uses does not authorize an occupation before an assessment of damages, and no court of equity can afford to regard a bold act of trespass as a sound foundation for an equitable priority of right.

The question is thus narrowed down to this: Can one railroad company acquire a priority by filing a petition for the appropriation of a particular piece of property over a prior unrecorded acquisition of the same property by contract by another railroad company for an identical public use, with or without notice of the unrecorded prior conveyance? We pass, for the present, the effect of the notice of the prior rights of the Southern Railway Company heretofore set out. By an act of the Tennessee Legislature any railroad company is given authority to build and operate "lateral roads not exceeding fifteen miles in length, extending from the main stem or branch to any mill, quarry, mine, manufacturing plant," etc. Acts Tenn. 1903, p. 461, c. 210. Whether, and under what circumstances, private property can be taken for the construction of a spur to accommodate a private enterprise exclusively may be a matter of some doubt. The authorities are, perhaps, not harmonious, and the cases are noticed in 10 Am. & Eng. Ency. of Law (2d Ed.) p. 1078 et seq. See, also, Clark v. White, 2 Swan, 540; Memphis, etc., Co. v. Memphis, 4 Cold. 406, 424; Chattanooga Terminal Co. v. Felton (C. C.) 69 Fed. 273. We pretermit any expression of opinion, and for the purposes of this case shall assume that the Tennessee Legislature has the constitutional power to authorize the condemnation of private property for the purposes indicated by the proceeding instituted by the appellant corporation. The provisions of law conferring and regulating the right to condemn land for works of public improvement are contained in sections 1844 to 1867, inclusive, of Shannon's Code of Tennessee. The proceeding is by petition and notice to the owner, and section 1848 provides that the proceeding shall only "cover and affect the interest of those who are actually made parties," except unborn remaindermen. An analysis of the sections referred to indicates a careful observance of the rights of property owners and a purpose to prevent the acquisition of any rights by a corporation seeking to make an appropriation until a judgment of condemnation and an actual payment of the damages assessed. Section 1864 is supposed to confer some right to go upon and survey a right of way against the will of the owner, and before condemnation. The section reads thus:

"A person or company actually intending to make application for the privileges herein contemplated, and entering upon the land of another for the purpose of making the requisite examinations and surveys, and doing no unnecessary injury, is liable only for the actual damage done, and if sued in such case, the plaintiff shall recover only as much costs as damages."

If this be construed as permitting an entry against the will of an owner, it is, at most, an entry solely for the purpose of making the requisite examination and survey preliminary to the filing of a condemnation suit, and does not authorize any dispossession of the owner or occupancy for purposes of construction. But to make it plain that this provision shall not be regarded as affecting the owners' rights any further, the next section (1865) provides:

"No person or company shall, however, enter upon such land for the purpose of actually occupying the right of way, until the damages assessed by the jury of inquest and the costs have been actually paid; or, if an appeal has been taken, until the bond has been given to abide by the final judgment as before provided."

When, however, the damages have been assessed by a jury of inquest, and the defendant takes an appeal because dissatisfied, the railroad company may proceed with its construction, upon giving bond and security as provided by section 1864. No right of occupancy exists unless such bond is given. White v. Rd. Co., 7 Heisk. 518.

Section 1866 is supposed to recognize some right to take possession prior to an actual legal appropriation. This is a mistake. This section simply provides that an owner whose land has been taken may petition for a jury of inquest, and have the damages assessed as if upon a petition by the company for a condemnation, or "sue for damages in the ordinary way." Instead of authorizing by implication or otherwise an occupancy without the consent of the owner, the statute simply intends to enlarge the remedies of the owner in case possession is taken either with or without the consent of the owner so as to permit him to sue for an assessment of damages by a jury of inquest, or resort to any other common-law remedy. The section has been construed in Duck River R. Co. v. Cochrane, 3 Lea, 478, and Parker v. Railroad, 13 Lea, 669; and in the last-named case a bill was sustained which sought to enjoin further possession or occupancy taken against the owner's will.

It is not essential to the validity of a law authorizing an appropriation of land that provision shall be made for the payment of compensation before the actual appropriation, unless there is an express constitutional provision to that effect, provided adequate provision is made whereby compensation may be certainly obtained. Cooley's Constitutional Limitations, 6545 et seq.; White v. Railroad, 7 Heisk. 518. What we mean to be understood as holding is that the provisions of the existing law of Tennessee, as found in the Code sections referred to above, do not authorize an appropriation without a condemnation and the payment of compensation, save in the case provided for by section 1864, where there is an appeal after the damages have been assessed by a jury of inquest, in which latter case a bond in double the value of the damages assessed may be given conditioned to perform the final judgment. White v. Railroad, 7 Heisk. 518. But it is a sound and inflexible principle of constitutional law that private property cannot be taken and appropriated to a public purpose under the power of eminent domain except in accordance with legislative regulation and in strict pursuance of statutory authority. The corporation claiming the right to appropriate must follow the proceedings authorized by law, for in no other way can it deprive a citizen of his property right. Cooley's Constitutional Limitations, 653 et seq.; White v. Railroad, 7 Heisk. 518; 7 Ency. Pl. & Pr. 468. The cases of Simms v. Memphis & Charleston R. R., 12 Heisk. 621, and Railroad v. Telford, 89 Tenn. 293, 14 S. W. 776, have been cited as constructions of section 1866, and as holding that a railroad company may, without compensation or the consent of the owner, occupy land for railroad purposes; and that the provision of this statute for obtaining compensation obviates any constitutional objection. Neither case involved any application of this Code provision, and both cases involved the rights of the owner of lands appropriated or occupied by railroad companies under the terms of private or special railway charters. In the Simms Case the remedy of the own-

er was held to be barred by the limitation provided by the charter. In Telford's Case the charter provided that, in the absence of a contract with the owner, a grant should be presumed, and the owner barred from recovering the land or compensation unless he should, within five years after the road was constructed over his land, sue for damages as provided by the charter. There is no statute in Tennessee prescribing the effect of a survey for a proposed line of railway, nor providing for such a survey as a preliminary to a condemnation, nor allowing its registration. Given two condemnation proceedings seeking to appropriate the same land, priority should doubtless be accorded to the proceeding first begun upon the principle "qui prior est tempore potior est jure." Lewis, Eminent Domain, § 306; Elliott on Railroads, § 927; Lake Merced Water Co. v. Cowles, 31 Cal. 215. The appellant acquired no title or interest in the land by merely commencing a proceeding for its appropriation, nor the landowner any right to require the petitioner to take the land it sought to appropriate. The purpose to appropriate may be abandoned even after the assessment of damages. Stacey v. Vt. Cont. R., 27 Vt. 39, 7 Ency. Pl. & Pr. 626, 673; Dimmick v. Council Bluffs R. Co., 58 Iowa, 637, 12 N. W. 710; Schreiber v. Chicago, etc., R. Co., 115 Ill. 340, 3 N. E. 427; Matter of Military Parade Grounds, 60 N. Y. 319; First Nat. Bank v. West River R. Co., 49 Vt. 167. The only right which can be said to result from mere priority of time in the institution of such a proceeding is an equitable right of priority over a later effort to acquire the same property for a like purpose, whether by a like proceeding or contract with notice, actual or constructive. The case of Barre Railroad Co. v. Montpelier Companies, 61 Vt. 1, 17 Atl. 923, 4 L. R. A. 785, 15 Am. St. Rep. 877, and similar cases therein cited, stands upon the effect of the filing and registering of a definite survey and location made in pursuance of statute law. That case, and those upon which it rests, are placed upon the ground that by the requirement of a definite survey, and its registration, the Legislature intended that thereby a prior right to appropriate the lands pointed out should inure, and that this right is a lien or right or interest in the land, which would ripen into a title upon a purchase or condemnation. Mere priority of right accorded to one petitioner over another, upon the ground of priority in time should not have any retrospective operation, so as to give precedence over an earlier acquisition of the same right of way by contract. A proceeding to condemn is, in substance, a proceeding to compel a sale by the owner to the petitioner, and is justified only when the purpose for which the land is to be used is a public one. Under the statutes of most of the states such a proceeding can only be resorted to when the parties have been unable to agree upon terms of sale. 7 Ency. Pl. & Pr. 476, and cases cited. But in Tennessee the statute does not require that any effort shall be made for acquiring the property desired by private treaty, and there is no constitutional objection to a proceeding for condemnation before failure of negotiations. Bigelow v. Miss. Cent. R. Co., 2 Head, 624. Nevertheless, the proceeding to compel an appropriation is at least but a substitute for an acquisition by contract, and no superior equity is acquired by the institution of a suit for the purpose of condemnation over a prior agreement for the acquisition

of the same interest, valid between the parties, especially when this prior right was known to the petitioner when he started his proceeding. Treating the question as one of priority between mere equities, and each as equally innocent, that claimant first in order of time has, by virtue of that circumstance, the better right. He who is superior in time, in the absence of some higher equity, has, by virtue of that circumstance alone, the better right to the matter in dispute. Broom's Legal Maxims, p. 348. The case of M. & St. P. R. Co. v. Chicago, M. & St. P. R. Co., 116 Iowa, 681, 88 N. W. 1082, is much in point, and in its reasoning supports our conclusion.

The express provision of section 1848 is that "all parties having any interest in such land may be made defendants, and the proceedings will only cover and affect the interest of those who are actually made parties; unborn remaindermen being, however, bound by proceedings to which all living persons in interest are parties." To accord priority to such a petitioner over the interest acquired by a conveyance prior in date, though unrecorded, would be to bind and affect an interest not made a party, and in the teeth of the statute.

The registry statutes can have no important bearing, as under the Vermont statute construed in Barre R. Co. v. Montpelier Companies, 61 Vt. 1, 17 Atl. 923, 4 L. R. A. 785, 15 Am. St. Rep. 877, for the reason that there is no statute requiring or authorizing the registration of a railroad survey. Neither is a petitioner for condemnation in any sense a purchaser or a creditor within the purview of the registration statutes. If the complainant had actually acquired the right of way over the Luttrell land, and title had been vested by decree or deed, without notice of the prior purchase by the Southern Railway Company of the same easement, there would be much reason for holding it to be a bona fide purchaser under the case of Wilkins v. McCorkle (Tenn.) 80 S. W. 834, where the Tennessee Supreme Court held that a complainant under a rescission bill, who obtained a decree canceling a conveyance and revesting title without notice of an unrecorded deed by the defendant conveying the same land to a stranger, was a bona fide purchaser within the registration law. But that case is not applicable here, because the complainant acquired no charge, lien, title, or other interest before it had full notice of the conveyance to the Southern Railway Company.

3. But if the nonregistration of the Luttrell deed made it invalid as to the petitioner for condemnation of the land therein conveyed, although in no sense a creditor or purchaser, unless it had notice, then we are of opinion that knowledge of the fact that a contract for the construction of this very spur track over the identical route here in controversy had been concluded between the plants to be served and the Southern Railway Company, and that an agreement had been made for the conveyance of the requisite rights of way, is notice whether a conveyance had been executed or not. No one is an innocent purchaser for value who buys with knowledge of a prior sale of the same land by parol. Such a sale is not void, but voidable at the election of the parties only under the well-settled construction of the Tennessee statute of frauds; and a purchaser with notice of such an executory sale or contract is not a bona fide purchaser without notice within the

Tennessee registration statute. In this view of the case, we need not enter upon a consideration of the question as to whether the facts known were such as to devolve upon the complainant actual knowledge that an agreement for acquisition of this right of way existed, for whether that agreement was in parol or writing was of no importance to it. If the contracting parties elected to carry it out, it did not lie in the mouth of complainant to say that because it was not yet a written agreement it was invalid. Brakefield v. Anderson, 87 Tenn. 211, 10 S. W. 360; King v. Coleman, 98 Tenn. 562, 571, 40 S. W. 1082; Phillips v. Kimmons, 94 Tenn. 562, 29 S. W. 965.

Upon the whole case we see no reason for disturbing the order of the court below, which is therefore affirmed.