## Curran, et al. v. City of Louisville.

(Decided March 16, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.  Land—Action to Recover—Condemnation by City—Acts of City Not Inconsistent With Purpose for Which Property was Condemned.—In an action to recover certain real estate from the city of Louisville which it had acquired by condemnation proceedings for wharf purposes, Held, That the alleged purpose of the city to sell it to the Sinking Fund Commissioners was not inconsistent with the purpose for which the property was condemned, because the ordinance authorizing the conveyance to the Commissioners said that they "are to hold said property upon the same trusts and for the same purposes as it is now held by the city." Nor was the lease-hold granted by the city for railroad operations an abandonment of the property for the purpose for which it had been condemned, for the lease provided that it was subject to the city's right to use the land for a wharf, basin, or landing.

2.  Land—Government's Wall of Masonry.—The building of the wall of masonry by the government between the property and the river does not make it physically impossible to use the property for the purpose for which it was condemned, for the same power that put the wall there can remove it.

3.  Same—Acts Complained of—Do Not Amount to Forfeiture.—The acts complained of as above indicated do not amount to a forfeiture by the city of the right to use the property for the purposes for which it was condemned.

HENRY BURNETT for appellants.

CLAYTON B. BLAKEY and LEON P. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

Mrs. Margaret Curran, the widow, and Charles Curran, John Curran, Alice Curran, Nellie Curran, Anna Bell Curran and Margaret A. Curran, the only children and heirs of John Curran, deceased, filed this action in the court below, seeking to recover from the city of Louisville certain river-front real estate, and back rents on it. They set up, in substance, that in 1867 the city, in an action against their father, John Curran, had condemned the property for wharf purposes and a city basin; that the city acquired no right to use the property for any other purpose; that it had never used or attempted to make such use of the property; that its rights in the property for that purpose had been forfeited (a) because the city, on or about May 10, 1888, declared its intention to sell or convey the property to the Commissioners of the Sinking Fund of the City of Louisville, and would have carried out its purpose had it not been restrained by injunction from so doing; (b) because the city for many years had leased the property to railroad companies, and had permitted the erection of warehouses and other buildings on it, permanent in character, so that it had become impossible ever to use it for wharf or basin purposes; and (c) because there had been built on the north side of the lots and between them and the river a stone wall 15 feet above the level of low water, so that it was physically impossible to devote the property to the purposes for which it was condemned. They, therefore, charged that the easement gained by the condemnation proceedings was at an end, and that they were entitled to the property.

John Curran brought in 1879 an action similar to this, to recover the same property. He lost, and appealed to this court, where the judgment was affirmed. Curran vs. City of Louisville, 83 Ky., 628. At that time only twelve years had elapsed without use for wharf or basin purposes; and that was made one of the grounds of affirmance. But the opinion went further. It said:

"The right to use in such a case is not extinguished by mere disuse. There must be something more than this. There must be some act upon the part of the owner of the land or the servient estate inconsistent with the existence of the easement or dominant estate."

This brings us to consider plaintiffs' points (a) and (b) above, in connection with the quotation made of the

law applicable to this identical property. Manifestly the alleged purpose (a, supra) of the City to sell to the Sinking Fund Commissioners was not any act inconsistent with the purpose for which the property had been condemned; because the ordinance authorizing the conveyance to the Commissioners said that they "are to hold said property upon the same trusts and for the same purposes as it is now held by said city." And it will be remembered that this attempted change in the control of the city's rights was enjoined. Roberts vs. City of Louisville, 92 Ky., 95: Even had the purpose of the city to put the property under the control of the Sinking Fund Commissioners been carried out, under the ordinance from which the above quotation is made it would not have been an abandonment of the right to use the property for basin and wharf purposes. It follows, of course, that its effort so to do is not evidence of such abandonment.

Nor do we find (b, supra) that the leasehold granted by the city for railroad operations was any abandonment or surrender of the city's right to use the property for the purposes for which it had been condemned. The lease in existence at the time of the preparation of this case provides in express terms that the railroad use of the property is subject to the city's right to use same at any time as a wharf, basin or landing, and that whenever the city should determine to so use it the railroad should immediately surrender it. Instead, therefore, of being an evidence of an abandonment by the city of the property for wharf or basin purposes the lease is an evidence of the fact that the city yet expects to so use it, or at least has so kept the status as that it can do so whenever it desires.

The argument (c, supra) that the Federal government's wall of masonry between this property and the river makes it impossible to use the property for wharf or basin purposes does not appeal very strongly to us. Undoubtedly the same power that put the wall there could remove it. The channel on which this property abuts is maintained as one of the inland waterways of the Union and it is not to be supposed otherwise than that the Federal Government from time to time as the needs of commerce demand will aid by its structures, rather than retard, commerce upon its navigable streams.

The plaintiffs' petition alleges that the property was

condemned and the condemnation price paid to John Curran. If the city were using the property for the express purposes for which it was condemned his heirs, of course, could not complain. The city's delay while yet it keeps itself in position to use it for these purposes, however long extended, cannot in equity be used by the plaintiffs as a basis for recovering the property. If the city should eventually abandon its purpose to so use the property a different question might be presented; but, as we have above held, there is no evidence in the record to show such an abandonment at the time this action was instituted. This question, therefore, is not before us and is not now decided.

The judgment is affirmed.