TENNESSEE ELECTRIC POWER CO. v. J. T. HOLT et ux. .

No petition for Certiorari was filed.

Eastern Section, Oct. 23, 1926.

1. **Ejectment.** **Ejectment will not lie against a public service corporation which is endowed with eminent domain power.**

   The law is well settled that when a corporation, endowed with eminent domain power, has once acquired a right-of-way which it may have regularly acquired under the condemnation statutes, it cannot thereafter be ejected, and the landowner is given the right only to sue for damages as given him under the statute.

2. **Deeds.** **A deed does not pass the right of action to recover damages accruing prior to its execution.**

   Where a party having no title to land deeds a right-of-way and thereafter acquired a deed to the property, and again conveyed the same to a third party, where neither deed undertook to convey the right of action, held that the deeds did not pass the right of action and the party taking under the deeds could not maintain an action to recover damages accruing prior to the execution of the deeds.

3. **Eminent domain.** **A public service company is liable for damages for any property taken by it.**

   Where an electric power company had secured a right-of-way by deed and later changed the course of its line, taking more property, held that the company was liable for the value of the property taken.

4. **Eminent domain.** **Measure of damages.**

   Where a power company had maintained a power line across a tract of land and later changed the course of its line, and the owner of the land sought to recover as damages the difference between the value of the land with the power line over it, and without it, held that owner was properly denied such a recovery; the real measure of damages being the actual value of the land taken when the change was made.

5. **Deeds.** **Wording of deed held not to give public service company a right to change its line at will.**

   Where a deed of a right-of-way to a power company provided that the exact location of the wires, etc., was to be selected by the company after its final survey had been made, the deed being executed before the line was

located, held that under this deed when the line was located and put in operation the option of selection was at an end and the company must pay for any changes made thereafter.

6. **Damages. A public service company is liable for damages to the land-owner caused by the construction of its power line.**

Where a power company in erecting its line across plaintiff's land caused damages to the landowner by blasting, held that the company was liable for such damages.

Appeal from Chancery Court of Knox County; Hon. Chas. Hays Brown, Chancellor.

Modified, affirmed and remanded.

Jennings, Saxton & Wright of Knoxville, for appellant.

J. Alvin Johnson, of Knoxville, for appellee.

PORTRUM, J.   The Tennessee Electric Power Company is a public service corporation, organized under the laws of the State of Maryland, domesticated in Tennessee and engaged in the sale and transmission of electric current, serving a wide territory, principally in Eastern Tennessee.   This company absorbed the assets, consisting of plants, real estate, transmission lines, rights-of-way, etc. of the Eastern Tennessee Power Company, a Tennessee corporation, serving the city of Knoxville and surrounding territory.   This last-named company, in constructing its power line into the city of Knoxville, in the year 1911, acquired a right-of-way over the lands of Dr. B. M. Clark, by a deed executed by his widow, which granted to the company the right to construct its power lines over and across the boundary containing twelve acres, describing the boundary by adjoining landowners, and stating the lines would probably run across said land from the lands of Keener to the lands of King, in a northeast direction, "but the exact location of said lines, cables, poles, towers, etc., is to be selected by the second party, the Company, after its final surveys have been completed."

Soon thereafter the Company made its surveys and made and constructed its power line, by putting down six wooden poles across the property and stringing its wires thereon, which line was maintained as thus located up until 1922.   In this year the Tennessee Electric Power Company undertook to straighten its lines through this property, and to eliminate the wooden poles by erecting steel towers.   This straightening process changed the position of the line over the Clark land and was resisted by the present owner, the defendant, Mrs. Myrtle Foster Holt. Her husband, J. T. Holt, also a defendant, protested against the company changing the said line and acquiring new rights-of-way, forbade the employees of the Electric Company the right to enter and construct a steel tower.   They had at this time placed a concrete base as a foundation for the tower.

Mr. Holt says they had promised to desist from their attempt to reconstruct the line, but further says they did not abide by this promise, and for this reason, and to keep them off, he dynamited and destroyed the concrete foundation above mentioned. The company then decided to abandon their purpose of straightening the line or the erection of steel towers. It then reconstructed its line by erecting new poles, crossing the old right-of-way and then diverging in a southwesterly direction, establishing a new center line, and running clear of the old right-of-way until it coincided with the original center line at pole No. 1, a short distance from the boundary where the line passes off of the property in question. The original line and the new line established in 1922 made an obtuse angle and, using the line of 1922 as a base, a perpendicular to the vertex is 23 feet. The distance of the longitudinal or base line is not given, but runs the greater part of the distance through the farm.

The company went into possession of this new line upon its construction and maintained it until the latter part of the year 1923, when it set about the construction of a new line, using steel towers and eliminating the wooden poles, and, fearing a repetition of the conduct of Holt, if in fact he had not actively interfered in the construction of this last mentioned line, the company went into the chancery court and obtained an injunction against Holt, restraining him from in any wise interfering with the construction of said line, and after obtaining the injunction constructed this line, carrying a voltage of 120,000 volts, slightly to the south of the line previously constructed in 1922.

The defendants Holt answered the original injunction bill, denying the rights asserted by complainant, and filed a cross-bill in ejectment, seeking to eject the company from their property and have the Clark deed declared a cloud upon their title; and by amendment they averred that if the Clark deed passed any title it only passed a life estate, which fell in with the death of the life tenant, and that in either event they were entitled to recover and eject the company from their property.

The Chancellor held and decreed that the Electric Company acquired title to the right-of-way as originally constructed, but that the company had, since the filing of the suit, reconstructed its lines at a different location, for which it was answerable, and ordered a reference to ascertain the damage sustained by Holt by reason of the construction. The different items of this reference will be referred to in more detail hereafter. The clerk reported, and his report was confirmed. Both parties were dissatisfied with the decree of the Chancellor, and have appealed and assigned numerous errors.

The cross-complainants Holt cannot maintain ejectment to eject a public service corporation which is endowed with eminent domain

powers from the premises. The law is well settled that when a corporation endowed with eminent domain powers has once acquired a right-of-way, which it may have regularly acquired under the condemnation statutes, it cannot thereafter be ejected, and the landowner is given the right only to sue for damages, as given him under the statute. Saunders v. Railway, 17 Pickle, 209; 47 S. W., 155; Coal, Iron & Railway Co. v. Flume & Transportation Co., 1 Thompson, 282, 160 S. W., 522; Chambers v. Railway, 3 Thompson, 464, 171 S. W., 84.

But it was the duty of the Chancellor, these facts appearing, to order a reference, which he did, to ascertain the damages, if the parties have made out a case entitling them to damages for the land taken. Moses v. Sanford, 11 Lea, 731.

We do not think the cross-complainants Holt have made out a case entitling them to damages for the right-of-way taken in the year 1911, that is, the original right-of-way. They insist that the company only acquired a life estate under the Clark deed, and since the life estate fell in with the death of Mrs. Clark, in May, 1921, they have a right to recover the property, treated by the court as its value, as if taken in May, 1921. But their cross-bill was not filed until December, 1923, and the statute of one year may bar them even though their position be well taken. Chambers v. Railway, 130 Tenn., 459, 171 S. W., 84; Railway v. Jennings, 130 Tenn., 450, 171 S. W., 82.

But their position in reference to the life estate is not well taken. Dr. B. M. Clark died testate, willing his property to his executors, R. H. and J. Marsh Eddington, in trust for the use of his wife and children, and gave the executors the right to "take charge of and dispose of all the real and personal estate. . . . Said disposition shall be left to the sound judgment of my executors."

The executors qualified and thereafter J. Marsh Eddington died. The survivor, R. H. Eddington, was advised that the title to the real estate was vested in him as trustee for the use of the wife and children, so thereafter, or in the year 1918, the said executor executed a deed conveying the real estate, or the farm in question in this lawsuit, to the wife and children of B. M. Clark, deceased, designating Theresa Clark as the widow of B. M. Clark, and the three other grantees as children of B. M. Clark. This deed created the grantees tenants in common with equal estates, for a deed to a wife and children, though the children be not named, creates a joint estate. Beecher v. Hicks, 7 Lea, 207; Blackburn v. Blackburn, 109 Tenn., 674, 73 S. W., 109.

Therefore at the time Theresa Clark executed the right-of-way deed to the company in 1911 she had no title, the same being vested in the executors of her husband, and the right of action was given to the executors, which they could have prosecuted. Mrs. Clark and her

children conveyed the land in 1919, one year after receiving the executor's deed, to Mrs. Rutledge, the predecessor in title of the Holts, but neither of these two deeds undertook to convey the right of action which accrued by reason of the occupation of the right-of-way by the Power Company. A deed does not pass the right of action to recover damages accruing prior to its execution, and the vendee takes the property as he finds it. Smith v. Railway, 88 Tenn. (4 Pickle), 611, 13 S. W., 128.

The Chancellor correctly denied the right of the Holts to recover for the original taking, but he decreed that the company had taken a new right-of-way for which they were entitled to recover, and he also decreed that the company could elect to remove its lines to the original right-of-way, or to maintain them as presently located and pay the damage for the taking. The company declined to remove its lines, and is now in possession and claiming the new right-of-way, and it becomes a question of just what the landowners are entitled to recover under the new state of facts. The Chancellor ordered a reference to ascertain the value of the land with the power line constructed across it, and its value if removed. A value of $600 per acre was placed upon the land with the power line removed, and $300 per acre with the power line maintained as located. But the Chancellor correctly failed to sustain this item of damages, but likewise failed to decree any amount for the land actually taken. He also confirmed the Master upon the item of $200 as incidental damages caused by the construction of the line.

Counsel for the Holts assigned error and seek to recover $300 per acre, or $3600 as damages because of the depreciation caused by the construction of the power line across the property. This contention is not well made, for the reason that the Power Company acquired the right to maintain its lines across this boundary of land prior to the purchase by the Holts, and they also acquired the right to maintain the lines by reason of the construction of the new line in 1922, so the shifting of the line a short distance from where the company had the right to maintain it could not materially damage the landowners, and in fact, as the Master reported, was a benefit, for the reason that the wooden poles were removed, a steel tower taking their place, and the wires were raised in height. The contention that the abandonment of the original lines was an abandonment of the right to string the wires over the land, is not supported by either authority or reason.

But the company shifted its right-of-way, and of course took additional land, abandoning some and acquiring other land, and even though it required only twelve feet, as insisted by counsel for the company, yet whatever amount it acquired the owner is entitled to recover compensation for. The Master stated the proof tending to show the amount of land acquired was meagre, if any. This court

is not bound by a concurrent holding of the Chancellor and the Master when the Master expresses a doubt of there being any proof; therefore the cross-complainants were denied the right to recover the compensation guaranteed them under the constitution, that is, the fair cash value of the land actually taken. While the assignment of error is based upon the insistence that the owner is entitled to recover the depreciation in value of the whole tract, yet we deem it broad enough to cover the real merits of the case and sustain it to the extent of allowing the cross-complainants to recover the market value of whatever land was taken, to be determined under an order of reference.

The Power Company insists that it acquired the right under its deed from the widow of B. M. Clark to shift its power lines to any position upon the tract desired by it, and error is assigned to the action of the Chancellor in disproving this position, the deed referred to and above quoted providing that the exact location of the wires, etc., was to be selected by the company after its final surveys had been made, meant only, that when the final survey was adopted the company's selection was at an end, and the company was therefore confined to the selection as made.

The Master reported the landowner had sustained $200 incidental damages because of the manner of the construction of the line recently built. Both parties complained at this holding, the landowner because insufficient, and the company because excessive, and also because it should have been offset by damages sustained by the company by the conduct of Holt in blasting the concrete footing and other acts. This item of damage was found by the Master and concurred in by the Chancellor, and is binding upon this court if there be any evidence to support it. It is shown that the company in blasting threw rock upon the premises of the owner, and also badly damaged the roof to his dwelling and other buildings by blasting rock through them. We think the holding is supported by material evidence, and the amount found is not excessive.

But it is insisted the company should have been allowed a recovery for the damages sustained by it caused by the conduct of Holt in blasting the concrete footing. We think the Chancellor was correct in denying a recovery, because the company was attempting to construct a new line and acquire a new right-of-way over the land of Holt without proceeding in the ordinary and lawful way by condemning it. The statutes granting a right of eminent domain do not authorize an entry upon land without the consent of the owner, until his compensation is paid or secured. And while section 1866 of Shannon's Code, gives the owner a right to sue and recover his damages, it does not recognize any right of the appropriator to take possession of the property prior to actual legal appropriation. Railway Co. v. Railway Co., 66 C. C. A., 601, 131 Fed., 657; Clark v.

White, 2 Swan, 540. At the time of the acts complained of the company was a trespasser, and the law recognizes no remedy for a trespasser because his feelings are hurt by the abusiveness of the land-owner who is seeking to eject him. Another reason is, that the company suffered no damage in the construction of the concrete base, for the reason that it abandoned the line and the foundation base was of no benefit to it. It is no excuse to say it probably would have constructed its line there had it not been dynamited, because, by obtaining injunctive relief, as it did in this case, it could have constructed its line at any place desired.

The Master found that the width of the right-of-way taken and necessary for the use of the company in 1922 was 15 feet. This finding was concurred in by the Chancellor, and both parties were satisfied, for no assignment has been made attacking the same. Therefore the right-of-way as used just prior to the construction of the present line is decreed to be fifteen feet in width, or seven and one-half feet from the center line. The Chancellor found that a right-of-way for the present line of eighteen feet was sufficient, and the company assigns error, insisting that the width is wholly inadequate. The Master found that the proof as to what was actually used was meagre, if any, and we believe it insufficient to base a holding that eighteen feet would meet the requirements of the power line, for patrolling and repairing its lines, etc. This assignment is therefore sustained.

The decree of the Chancellor is affirmed except as modified in the two above instances. The case will be remanded, with direction to the Chancellor to order a reference to ascertain—

1. How wide a strip of land is necessary for right-of-way purposes, measuring from the center line?

2. What is the actual amount of land taken, exclusive of the old and the fifteen foot right-of-way, and what was its cash value?

3. What incidental damages if any were sustained by the land-owner by reason of the shifting of the right-of-way, excluding those items of incidental damages heretofore reported upon and allowed in this cause?

In determining these questions the master may take additional proof, if necessary.

The cost of the cause is taxed, two-thirds against the Company, and one-third against the landowner.

Snodgrass and Thompson, JJ., concur.