MURRAY v. PATTERSON et ux.—72 S. W. (2d) 558.

Middle Section. February 17, 1934.

Petition for Certiorari denied by Supreme Court, June 23, 1934.

D. R. Wade, of Pulaski, for plaintiffs in error.

R. E. Lee and Bennett Eslick, both of Pulaski, for defendant in error.

FAW, P. J. On a former day of the term the judgment of the trial court in this case was affirmed for the reason that, as it then appeared to the court, the bill of exceptions was not signed by the trial judge, and all of the assignments of error depended upon matters which it was necessary to preserve by bill of exceptions.

In due season, the plaintiffs in error, Patterson and wife (the defendants below, and hereinafter called defendants), filed a petition for a rehearing, accompanied by affidavits from which it appears to our satisfaction that, although the trial judge did not sign the bill of exceptions at the place manifestly prepared, according to the usual form, for his signature, he had signed it on the following page, at the foot of an additional recital in the form of a minute entry under the style and docket number of the case, with the understanding that he was signing the bill of exceptions, that the aforesaid recital in the form of a minute entry was not intended as such and was not entered on the minutes, but was in fact "a component part" of the bill of exceptions, and that the trial judge signed at the place where his signature appears, with the intention and for the purpose of authenticating the entire bill of exceptions. The petition for a rehearing is therefore granted, our former judgment of affirmance is vacated and set aside, and the cause will now be considered upon the entire record, including the bill of exceptions, assignments of error, briefs, and oral arguments of counsel heretofore heard at the bar.

The defendant in error, Mrs. Susie L. Murray (plaintiff below, and hereinafter called plaintiff), and the defendants, C. B. Patterson and his wife, Mrs. Nora Franks Patterson, were, on March 7, 1930, and for some years theretofore, the respective owners of two adjoining brick buildings, with the land upon which they stood, situated on the south side of the public square in the town of Pulaski, Tennessee, between which buildings there was a party wall standing in part on the land of plaintiff and in part on the land of defendants and supporting the floors and roof of each of said buildings.

On October 2, 1929, the entire inside of defendants' building, then equipped and used for the purpose of a "picture show" was destroyed by fire, leaving the walls standing. In February, 1930, defendants began the reconstruction of the interior of their building,

and, about 1 or 2 o'clock in the morning of March 7, 1930, a considerable part of the aforesaid party wall fell, and this action was thereafter brought by plaintiff, Mrs. Murray, against defendants, Patterson and wife, to recover damages for the injuries to her building resulting from the collapse of said wall.

The respective buildings of plaintiff and defendants had a frontage of approximately 20 feet each on the south side of the public square, and the defendants' building (to which we will refer as the Patterson building) was on the west side of the plaintiff's building (to which we will refer as the Murray building). The Murray building extended back southward 165 feet to an alley, but from the front to a depth of 100 feet it was a two story building and for the remaining 65 feet to the alley it was a one-story building. The Patterson building was a two-story building.

After averring, in substance, the facts which we have already stated, plaintiff's declaration proceeds and concludes as follows:

"Plaintiff further avers that said Pattersons after said fire, began certain excavations within their walls for the purpose of reconstructing their building, and in making said excavations, without the knowledge or consent of plaintiff, removed the dirt which formed the lateral support of said party wall from the west side of said wall for the purpose of sloping the floor in their building from the front toward the rear; that said Pattersons cut away and removed all of said dirt from the west side of said party wall and undermined said party wall for the purpose of putting in pillars for the support of said sloping floor, said excavation being made to a depth of several feet below the bottom of said party wall.

"Plaintiff avers that said excavation was done in a negligent, reckless, careless, and unskilled manner, and, because of the removal of said lateral support in the manner aforesaid by the defendant Patterson, and in the failure of the defendant Patterson to properly support said wall before the removal of said lateral support, said party wall for a distance of about 100 feet beginning at about 60 feet from the front, collapsed for approximately the entire distance of said excavation. Throughout the length of said excavation where said dirt had been removed, the said wall fell in upon the building of plaintiff, absolutely destroying plaintiff's building in the rear for a distance of approximately 100 feet.

"Plaintiff further avers that the front of said party wall in length about 65 feet where no excavation was made did not collapse and still remains standing. Plaintiff therefore avers that the collapse of said party wall, which resulted in the absolute destruction of about 100 feet of plaintiff's building, was caused by the gross negligence and carelessness of defendants in making said excavation and removing said lateral support and in undermining said party wall without the knowledge and consent of plaintiff, and that the

action of the defendants Patterson in making said excavation, removing said lateral support, and undermining said wall was the proximate cause of the collapse of said wall and the proximate cause of the injury and damages to plaintiff's building and the destruction thereof. Plaintiff, therefore, avers that as a result of said negligence and carelessness of defendants Patterson her said building was almost destroyed and greatly damaged and she therefore, sues the defendants for said sum of $10,000 as damages, and demands a jury to try this cause.''

Defendants pleaded the general issue, not guilty, and also filed a ''plea in abatement,'' in which latter plea they averred that, since the filing and service of the original summons in this cause, the plaintiff, Mrs. Susie L. Murray, has sold, transferred, and conveyed unto B. F. McGrew all right, title, and interest which plaintiff had in the subject-matter of this lawsuit, and has transferred and conveyed unto B. F. McGrew the real estate to which the alleged injuries were done, together with all her interest therein, and that there was sold, by said conveyance to the said B. F. McGrew, plaintiff's alleged right of action, if any, the subject-matter of this lawsuit, and the same should therefore be abated.

The plaintiff joined issue upon said ''plea in abatement.''

Defendant Mrs. Nora Franks Patterson also filed a special plea that, at the time of the injuries complained of in plaintiff's declaration, she owned no part of the lot and building adjoining that belonging to Mrs. Susie L. Murray and had no interest in the alleged alterations made in the picture show building or lot, that she did not make said alterations or changes and did not authorize or direct that same be done, and therefore could not have caused the injuries complained of in plaintiff's declaration; but the defense thus pleaded by Mrs. Patterson has not been relied upon in this court, and need not be further noticed.

The case was tried to a jury, and the jury found the issues in favor of the plaintiff and assessed her damages at $1,500, and judgment of the court was entered in accordance with the verdict. A motion for a new trial was made and overruled, and the defendants excepted to the action of the trial court and appealed in error to this court and have assigned errors here.

The defendants have filed assignments of error numbered from 1 to 15, inclusive, but several of these assignments assert, in diverse forms, that the evidence preponderates against the verdict of the jury. Such assignments present no question which this court can consider. It is obvious that the plaintiff's declaration states a good cause of action, and there is no claim to the contrary. If there is any evidence reasonably tending to prove the material averments of the declaration, the verdict of the jury, approved by the trial judge, is conclusive in this court, and we must disregard all counter-

vailing evidence. The verdict of the jury has settled all conflicts of testimony in favor of the plaintiff, and the plaintiff is entitled to the benefit of all legitimate inferences favorable to her which the jury could reasonably draw from the evidence tending to support the averments of the declaration.

The rules just stated have been announced so many times, in published opinions of the Supreme Court and of this court, that we deem it unnecessary to cite the cases.

The seventh, eighth, ninth, and tenth assignments must be disregarded because of their utter nonconformity with the published rules governing assignments of error. These assignments are as follows:

"7. Because the evidence of the witness Waller was incompetent and was permitted to go to the jury over the exceptions of the defendants.

"8. Because the verdict of the jury was influenced and brought about by the opinions given by the witness Waller, which was incompetent and which was admitted over defendant's exceptions.

"9. Because the opinion evidence of the witness Waller was incompetent, not being based upon either facts or observation to substantiate the same.

"10. Because the testimony of the witnesses Gladish and Callahan, as to their bid made to repair the buildings, was incompetent and the jury was influenced thereby."

It is provided by the Rules of this court (rule 11, subsec. 3) and by the Rules of the Supreme Court (rule 14, subsec. 3), that, "When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found." See Appendix to 155 Tenn., v and xii.

It is so obvious that the above-quoted assignments do not conform to the letter or spirit of the rules cited above that further comment on this matter is unnecessary.

There is an assignment that "there is no material evidence to support the finding of the jury;" but it is, to say the least, questionable whether defendants relied upon this assignment in their brief and argument, for the argument on behalf of defendants with respect to the facts is rested mainly upon an asserted preponderance of the evidence in favor of defendants. It is said in defendants' brief and written argument that "this case presents four questions for the determination of the court." We will consider the four questions into which defendants have thus resolved their assignments of error in the order of their statement and discussion in the brief.

1. It is first said that plaintiff has no right of action because she has sold, transferred, and conveyed all her right, title, and interest in her lot and building here involved to B. F. McGrew since

the wall fell and since the institution of this suit.

The record shows, without dispute, that plaintiff (with her husband joining) sold and conveyed said property to B. F. McGrew on June 3, 1930. The deed of conveyance from plaintiff and her husband to McGrew is in evidence, and no mention is made therein of her claim or right of action against the Pattersons for injuries to the property conveyed.

The undisputed testimony of plaintiff and her husband negatives the idea that there was any purpose or intention on their part to convey plaintiff's right of action against the defendants, and testimony of B. F. McGrew is to the effect that he had no intention of purchasing such claim or right of action, and that he did not understand that he had done so.

Upon the foregoing facts, the plaintiff's right of action against defendants did not pass to McGrew. "A vendor may sue to recover damages sustained by him from a trespass or other injury to the land prior to the sale." 39 Cyc., p. 1683; Shaw v. Robinson, 111 Ky., 715, 64 S. W.. 620, 623; Gulf, etc., R. Co. v. Provo (Tex. Civ. App.), 84 S. W., 275, 277.

In Smith v. Railway Co., 88 Tenn., 611, 613, 13 S. W., 128, it was held that damages for taking land under the writ of eminent domain applied to the owner at the time of the taking, and such claim for damages does not pass to the grantee of the lands over which a right of way has been taken, unless expressly conveyed.

And the case last cited was followed in Tennessee Electric Power Co. v. Holt, 3 Tenn. App., 372, 376.

█ 2. It is next said that there was a "bulge" and a "dangerous crack" in the party wall; that these conditions were visible inside the Murray building but not inside the Patterson building; that they were known to E. H. Murray, plaintiff's husband and her agent in the management of her property, but were not known to defendant Patterson; that E. H. Murray saw defendants' work of reconstruction going on and did not notify defendants of the existence of the "bulge" and "dangerous crack" in the wall; and that plaintiff is therefore estopped to claim any damages on account of the collapse of the party wall.

It is unnecessary to consider the extent to which, in law, the doctrine of estoppel would apply to the state of facts thus assumed, for the reason that the contention thus made is based upon evidence which was disputed.

There was material and substantial evidence that there was no "bulge" in the party wall, that there was merely a crack in the plaster, and none in the brick, on the Murray side of the party wall, and that this "plaster crack" had been there for many years, and was not of a nature that could weaken the wall, and that, when the wall collapsed, it did not break off in and following said crack, but

at a point 15 or 20 feet therefrom. Such was the testimony of E. H. Murray and other witnesses for the plaintiff, and the verdict implies that the jury accepted their testimony on these disputed matters.

3. The next proposition upon which defendants insist is that they had the right to make their contemplated improvements, including the use of the party wall, that they were not guilty of any "negligent and improper workmanship in doing so," and that defendants "neither caused nor proximately brought about the collapse of the wall, but that same fell because of its own weight, its aged and damaged condition and the unusual stress of the weather."

In 2 Cooley on Torts (4 Ed.) (1932), sec. 294, pp. 378, 379, it is said, on the subject of party walls, that "each proprietor owes to the other the duty to do nothing that shall weaken or endanger it, and though each may rightfully, when he finds it for his interest to do so, increase its height, sink the foundations deeper, or on his own side add to it, yet it seems that in doing so he is insurer against damages to the other proprietor;" and, in support of the statement that "he is insurer against damages to the other proprietor," the author cites a number of cases, the first of which is Carroll Blake Construction Co. v. Boyle, 140 Tenn., 166, 203 S. W., 945, 946, in which our Supreme Court quoted and approved the foregoing statement of law, and, applying it to the facts of the case then in hand, said:

"We are of the opinion that Evans and Oppenheim had the right to make such alterations or repairs in the part of the wall standing upon the Evans lot as was necessary to erect the proposed building, provided it could be done without weakening or otherwise impairing plaintiffs' use of it, and that in so doing they stood as insurers to plaintiffs against injury to their house growing out of the work."

It follows, from the principles we have stated and the authorities cited, that, if the work done by defendants caused the party wall to collapse, the defendants are liable to plaintiff for whatever damages she has suffered thereby, without regard to the negligence or nonnegligence of the defendants in the manner of doing the work.

But, if nothing done by defendants caused the wall to fall, and it collapsed from causes over which defendants had no control, the defendants are not liable.

Defendants rely upon the rule that, where plaintiff pleads negligence generally, and then in another paragraph pleads certain acts which were relied on as negligent, plaintiff is bound to recover, if at all, upon the specified acts pleaded, citing in support thereof Nashville, C. & St. L. Railway v. Whitt, 5 Tenn. App., 463, and Memphis St. Railroad Co. v. Berry, 118 Tenn., 581, 588, 102 S. W., 85.

The rule thus invoked is well established, but it does not control in a case of this kind, where the defendants were insurers against damage to plaintiff from the work defendants were doing, for the same reason that, where res ipsa loquitur is otherwise applicable,

the plaintiff does not lose the benefit of that presumption by alleging specific acts of negligence of the defendant which he fails to prove. Nashville Interurban Railway v. Gregory, 137 Tenn., 422, 433, 193 S. W., 1053; Greyhound Lines, Inc., v. Patterson, 14 Tenn. App., 652, 657.

There was ample evidence before the jury from which it could be found that the defendants caused the party wall to fall by removing the "dirt" which formed its lateral support.

After the interior and the roof of the Patterson building were destroyed by fire in October, 1929, the earth beneath that building was exposed to rains, snows, and freezes during the winter which followed, and the proof is that the winter was an unusually severe one. Defendants' plans for the reconstruction of their building as a modern picture show building contemplated an inclined floor from the rear to the front, and, in order to so construct the floor, it was necessary to remove the earth from the basement to a depth of several feet.

In the front of the Patterson building there was a basement extending back about 60 feet, and in the rear end of the building there was a boiler room about 20 feet long. Between the front basement and the boiler room in the rear, a distance of 80 or 85 feet, the earth had not been excavated prior to the excavation which immediately preceded the collapse of the wall, except that a trench about 3 or 3½ feet wide had been dug through the middle for the passage of the steam pipes from the boiler room to the front basement, leaving a shoulder of 7 or 8 feet of earth, on its natural grade, between the aforesaid trench and the party wall, as a lateral support for the wall. Shortly before the wall fell, the earth between defendants' front basement and boiler room, a distance of 80 or 85 feet, was excavated and removed, under the personal direction and supervision of defendant C. B. Patterson, to a depth of 4 or 5 feet, and in this process the earth was dug out and removed flush with the west side of the party wall, and the lateral support of the wall was thus removed to an approximate average depth of 3 feet below the foundation of the wall. Such is the testimony of five witnesses for plaintiff whose character for truth and veracity is unimpeached, and, according to their testimony, they were qualified by actual observation—some a few hours before and some after the collapse of the wall—to know the facts to which they testified.

The testimony of these witnesses is to the effect that, by reason of the removal of its lateral support on its west side, the party wall "slid" into the basement of the Patterson building.

Defendant C. B. Patterson, and other witnesses for defendants, likewise unimpeached in character, testified that the excavation was not flush with the side of the wall, but that a shoulder of earth 2½ to 3 feet in width was left undisturbed next to the party wall, ex-

cept that some openings had been cut through this shoulder at points where brick pillars were being put in for the purpose of underpinning the wall.

However, under the rules hereinbefore stated, these conflicts of testimony have been settled by the jury in favor of the plaintiff, and we are bound by the verdict on the facts wherever there is any material evidence to support it.

It is said in the brief for defendants that "there is some dispute as to whether this shoulder of dirt was left but we think the preponderance of evidence is positively and clearly with defendants." It is thus seen that on this point the defendants do not claim that there is no evidence to support the finding of the jury in favor of plaintiff.

The plaintiff introduced much evidence to the effect that it was improper, and not according to accepted methods and standards for doing such work, to remove the lateral support of the wall, as was done in this instance, without shoring or propping the wall, which defendants admittedly did not do. This evidence supports the averments of the declaration charging the defendants with negligence in the manner of doing the work in question; but, as we have held that, in undertaking to reconstruct the foundation of the party wall, defendants were insurers against damages to the plaintiff, it is not necessary to further discuss the evidence tending to support the averments of negligence in the declaration.

The proof shows that the burning of the interior of the Patterson building in October, 1929, made a very hot fire, and that at that time much water was thrown on the party wall while it was hot; and defendants contend that this weakened the wall, but there is evidence that the strength and stability of the party wall was not affected by the fire or the water thrown on it at that time.

It is also in evidence, and undisputed, that there was a windstorm of considerable velocity and a "heavy" thunderstorm on the night the wall fell; and it is the contention of defendants that the wall "fell because of its own weight, its aged and damaged condition and the unusual stress of the weather."

It does not appear that any other buildings in the vicinity of the Murray building were damaged by the storm, and, as there was much affirmative evidence tending to show that the wall fell from the aforementioned causes set in motion by the defendants, the question of the proximate cause of the collapse of the wall was for the jury. The verdict was supported by material evidence, and does not rest on conjecture.

4. The next and last insistence on behalf of defendants is "the amount of damages awarded by the jury is not borne out or supported by the evidence."

On this point, the argument for defendants is based on

an asserted preponderance of evidence. The amount of the damages suffered by the plaintiff in an action for injuries to property is a matter of fact for the jury to determine, and, on appeal, "the strongest legitimate view of the plaintiff's evidence will be accepted as true." Coleman v. Bennett, 111 Tenn., 705, 714, 69 S. W., 734, 736; Aycock v. N., C. & St. L. Railway, 4 Tenn. App., 655, 661.

According to the proof in the instant case, the cost of restoration of plaintiff's building would have been more than the depreciation in value; hence the true rule for measuring the damages which plaintiff was entitled to recover was the difference between the value of her premises immediately prior to the injury and the value immediately after the injury—in other words, the depreciation in value resulting from the injury inflicted by the defendants. Aycock v. Railway Co., supra, page 663 of 4 Tenn. App.

A number of qualified witnesses introduced by plaintiff testified to the market value of the Murray building immediately before, and its market value immediately after, the collapse of the wall, and their testimony shows a depreciation greater—in some instances very much greater—than the amount of damages assessed by the jury.

It is clear that there is material evidence to support the amount of damages awarded by the jury. It results that the assignments of error are overruled and the judgment of the trial court is affirmed. Judgment will accordingly be entered here in favor of the plaintiff, Mrs. Susie L. Murray, and against the defendants, C. B. Patterson and Mrs. Nora Franks Patterson, for $1,500, with interest thereon from the date of the judgment below and for the costs accrued in the trial court.

The costs of the appeal will be adjudged against the defendants and the surety on their appeal bond.

Crownover and DeWitt, JJ., concur.