SHINKLE *v.* NASHVILLE IMPROVEMENT Co. *et al.*

*(Nashville,* December Term, 1937.)

Opinion filed Feb. 12, 1938.

Robert Lusk, Andrew Ewing and L. R. Campbell, all of Nashville, for A. Clifford Shinkle.

Moreau P. Estes, Jos. J. Lutin and Moreau P. Estes, Jr., all of Nashville, for Nashville Improvement Company *et al.*

Mr. Justice McKinney delivered the opinion of the Court.

By the bill filed herein on October 30, 1935, complainant, a resident of Ohio, seeks to have a vendor's lien enforced on a tract of land which he conveyed to the Nashville Improvement Company, and also to have a lien declared on a water pipe line constructed on said premises.

The chancellor entered a decree in favor of complainant for the unpaid purchase money, and ordered the land sold to satisfy same, but decreed that complainant was not entitled to a lien on the pipe line. As to this latter ruling, the complainant has appealed.

After the cause had been heard and taken under advisement by the chancellor, and when he was about to decide the cause, counsel for defendants requested that he be permitted to file a cross-bill in which it was claimed that complainant by declining to accept certain funds which had been tendered to his attorney for him had lost his lien on certain portions of this property, and

also to recover damages from complainant for breach of contract. The chancellor declined to permit the cross-bill to be filed, and defendants have appealed as to that feature of the cause.

In this opinion we will not detail all of the facts, but only such as are sufficient to enable us to dispose of the questions involved.

The cause was heard upon the pleadings, exhibits, and a written stipulation of facts.

Prior to November 18, 1929, complainant owned a tract of land in Davidson county containing about 55 acres. This tract of land adjoined the city of Nashville on the south and east, and was adjacent to a thickly settled residential section of the city of Nashville.

Complainant subdivided his tract of land into lots and streets, and had a plat of same recorded in the register's office. This property lies to the north of Porter road, which is a very old highway. Complainant had a road constructed from Porter road north through the middle of said property, which was designated on said plat as "Riverside boulevard," and he conveyed said boulevard to Davidson county in trust for the use of the public as a highway. According to said plat, McKinney avenue bounds said tract of land on the west, the distance between said avenue and Riverside boulevard being about 640 feet.

On November 18, 1929, complainant conveyed said property to defendant Nashville Improvement Company, a corporation, for a consideration of $25,000, $2,500 being paid in cash and vendor's lien notes executed for the balance. When the bill herein was filed, only $8,000 of the purchase money had been paid. The property was conveyed to the Nashville Improvement Company

for the purpose of being subdivided into residential lots, as appears from the deed, which provides for the release of liens as lots are sold.

After purchasing this property, the Nashville Improvement Company subdivided that portion lying between Riverside boulevard and McKinney avenue and Porter road and Shankle avenue, which it designated as the "Porter Road Subdivision," and a plat of same was duly recorded. A north and south road through this latter subdivision, and about halfway between Riverside boulevard and McKinney avenue, was constructed and given the name of Porter avenue. This road or street appears on said recorded plat.

Beginning in 1931, the Nashville Pipe Line Company, a Tennessee corporation, began laying a 6-inch water main on Riverside boulevard and Porter road and a 2-inch pipe on Porter avenue, this work being completed on September 24, 1932, or more than three years before the bill herein was filed. This pipe line was laid 5 feet beneath the surface of said streets, and was connected with the city of Nashville water system at the corner of Greenwood avenue and Porter road. The Nashville Pipe Line Company is not a water company and does not furnish water to residences adjacent to its line. The water is purchased from the city of Nashville. The Nashville Pipe Line Company constructed this line at a cost of $15,000. It sells to residents the privilege of tapping said line, receiving from $75 to $100 for such privilege. But it has never sold or received revenue of any kind or character for water.

The purpose or object of the Nashville Pipe Line Company is thus stated in its charter of incorporation:

"The general nature of the business to be transacted

by this corporation is building, buying, maintaining, leasing, owning and or operating pipe lines or water mains and or giving, selling, or leasing water rights, taps or connections therefrom.''

This corporation was created under and by virtue of the provisions of chapter 90 of the Public Acts of 1929, which is a general incorporation law for all private business corporations not expressly excluded by the act. We quote from section 1 thereof as follows: ''Provided, however, that corporations shall not be formed under this Act to conduct the business of Banking Companies, Trust Companies, Building and Loan Associations, Insurance Companies, Mutual Fire Insurance Companies, Sureties Companies, Express Companies, Railroad Companies, Street and Interurban Railways and Motor Bus Transportation Companies, Water, Gas, Electric Light and Power Companies, Telegraph and Telephone Companies, Co-operative Associations, Fraternal Benefit Societies, State and County Fairs and Expositions, Cemetery Companies and corporations not for profit, which said corporations so excepted shall continue to be organized and incorporated under and pursuant to existing laws.''

In section 3, after enumerating many businesses that may be incorporated under the act, it is provided:

''But the express enumeration of the business enterprises above set forth shall not exclude any other lawful business pursuit, object, or purpose from the provisions of this Act, save those expressly excepted in Section 1 hereof; it being the purpose of this Act to provide a uniform and general incorporation Act for every character of lawful business, whether enumerated herein or not, save those expressly excepted, with powers,

privileges, and penalties as herein provided, applicable to each and all alike.''

This act expressly excludes water companies, but does not exclude pipe line companies. We think the Nashville Pipe Line Company was lawfully incorporated under this act. This being true, we are of the opinion that the following provisions of the Code are applicable:

3109: ''Any person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law, or by the charter under which the person or corporation acts, in the manner and upon the terms herein provided.''

3131: ''If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.''

3132: ''The owners of land shall, in such cases, commence proceedings within twelve months after the land has been actually taken possession of, and the work of the proposed internal improvement begun; saving, however, to unknown owners and non-residents, twelve months after actual knowledge of such occupation, not exceeding three years, and saving to persons under the

562

disabilities of infancy and unsoundness of mind, twelve months after such disability is removed, but not exceeding ten years.''

The installation of this pipe line was a work of internal improvement. Under section 4, chapter 90, Acts 1929, there was conferred upon the pipe line company the right or power of eminent domain. The pipe line company having laid its pipes in said streets, the complainant, being a nonresident, had three years within which to institute suit for any damages sustained thereby. Having failed to avail himself of the remedy afforded him by law within the time provided, his cause of action is barred, and the pipe line company, or its successor, has acquired an easement in said streets.

We are of the opinion, furthermore, that this improvement was a benefit rather than a detriment to this property, and that it would be inequitable and unjust to decree this pipe line to complainant for which he has not contributed $1.00.

The case of *Lea* v. *Louisville & N. R. Co.,* 135 Tenn., 560, 188 S. W., 215, is not applicable. The principle announced in *Frazier* v. *Telephone Co.,* 115 Tenn., 416, 417, 90 S. W., 620, 3 L. R. A. (N. S.), 323, 112 Am. St. Rep., 856, 5 Ann. Cas., 838, and *Baltimore County Water & Electric Co.* v. *Dubreuil,* 105 Md., 424, 66 A., 439, 9 L. R. A. (N. S.), 684, is more in point.

We are further of the opinion that under the facts appearing the chancellor did not abuse his discretion in declining to permit defendants to file their crossbill. The original bill was filed October 30, 1935; the cause was heard and taken under advisement on May 3, 1937; the motion to file said cross-bill was made on the day that the chancellor was to render and did render his

decision, namely, July 9, 1937. The defendants were four or five years behind in their payments. The granting of the motion would have resulted in a continuance of the cause. Defendants only proposed to tender a sum sufficient to discharge the lien on a few of the lots. Actual tender was only made as to one lot, but it was alleged that the agent and attorney for complainant stated that he would not accept further tenders if they were offered. The tender was not kept good by paying same into court. In these circumstances, we think the chancellor very properly overruled the motion.

We are further of the opinion that it was incumbent on defendants to keep said tender good by paying the money into court. 62 C. J., 681; *Glover* v. *L. & N. R. R. Co.,* 163 Tenn., 85, 40 S. W. (2d), 1031.

In the third place, in the absence of statute, the general rule is that a tender after suit has been brought is ineffectual. 62 C. J., 666; *Lincoln Sav. Bank* v. *Ewing,* 80 Tenn. (12 Lea), 598; *Keith* v. *Smith,* 31 Tenn. (1 Swan), 92.

On the day that the chancellor rendered his decision in the cause, complainant, without objection, was permitted to amend his bill so as to pray that said lands be sold on a credit of six and twelve months, in bar of the equity of redemption, and the sale was decreed in conformity with this amendment, it being stated in the decree that the property was ordered sold on such terms on motion of solicitors for complainant made at the bar of the court. No exception was taken thereto, but error is assigned in this court because the chancellor did not order the property sold for cash, as provided in the deed. In view of the foregoing, we hold that complainant is in no position to make this insistence.

We find no error in the decree of the chancellor and it will be affirmed. One-half the costs of the appeal will be paid by complainant and the other half by the defendants.

The cause will be remanded to the chancery court for the execution of its decree.