## H. E. ROGERS v. CITY OF KNOXVILLE—289 S. W. (2d) 868.

Eastern Section. March 15, 1955.

Petition for Certiorari denied by Supreme Court, November 7, 1955.

Donaldson, Montgomery & Kennerly, Knoxville, for plaintiff in error.

Ambrose & Wilson, Knoxville, for defendant in error.

McAMIS, P. J. This case is styled in reverse, the defendant below, City of Knoxville, having appealed in error from a judgment in favor of the plaintiff, H. E. Rogers, who sued for damages to his lots by reason of the construction thereon of an electric transmission line.

The city contends that it acquired the right to build the line under a grant of Tennessee Valley Authority dated July 2, 1952, purporting to convey to it portions ''of the right of way formerly occupied by the Arlington Holston Quarry K V transmission line and the Arlington-Waterville 110 K V line'' some 20 miles in length and crossing at a point within the City of Knoxville the lots in question. The case turns on the validity of plaintiff's insistence (1) that TVA's predecessor in title, Tennessee Public Service Company, having moved on the land and appropriated it without condemnation under Code Section 3131, acquired no transmissible right and, therefore, could convey none and (2) that even if TVA acquired a right to maintain a line across the lots it voluntarily

moved the line and abandoned its easement in 1944 with the result that when plaintiff purchased the lots in 1951 there was nothing of record or physically present on the ground to impart actual or constructive notice of an easement.

Code Sections 3110, 3131 and 3132 provide:

"The person seeking to appropriate such land shall file a petition in the circuit court of the county in which the land lies, setting forth, in substance: (1) The parcel of land or rights therein or incident thereto a portion of which is wanted, and the extent wanted; (2) the name of the owner of such land or rights, or, if unknown, stating the fact; (3) the object for which the land, etc., is wanted; (4) a prayer that a suitable portion of land or rights may be decreed to the petitioner, and set apart by metes and bounds, or other proper mode. * * *

"If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest. * * *

"The owners of land shall, in such cases, commence proceedings within twelve months after the land has been actually taken possession of, and the work of the proposed internal improvement begun * * *."

It is the insistence of the city that when its predecessor in title, Tennessee Public Service Company, a public service corporation, moved upon the land in 1930 and appropriated it to a public use it became vested with a transmissible easement and that the exclusive remedy of the landowner was to sue for damages under Section 3132. Plaintiff insists, to the contrary, that since his predecessor in title elected not to sue within one year as provided and have the right of way laid off by metes and bounds, thus fixing its location and limits, the appropriator acquired only a possessory right which could not be transmitted and which, in any event, terminated upon removal of the line in 1944.

■ ■ The question of the nature of the right acquired upon the entry of a public service company upon land for public improvement purposes upon failure of the owner to sue for damages within the limitation period of one year is of first impression. Our cases hold that the owner's action for damages excludes the right to enjoin a taking by a public service corporation as well as the right to sue it as a trespasser or to sue in ejectment. Armstrong v. Illinois Central Ry. Co., 153 Tenn. 283, 282 S. W. 382; Doty v. American Telephone & Telegraph Co., 123 Tenn. 329, 130 S. W. 1053; Tennessee Coal, Iron, etc., Co. v. Paint Rock, etc., Co., 128 Tenn. 277, 160 S. W. 522. But these holdings are not necessarily inconsistent with the view that the right of the corporation is nothing more than the right to occupy the land for a public use. For as said in Armstrong v. Illinois Cent. Ry. Co., supra, the mere fact that the possession of the appropriator is illegal does not entitle the owner to injunctive relief to regain possession.

"The statute says that where the public service corporation is in possession the owner shall proceed in a certain way, and it says nothing about the method by which the possession was acquired.

"*Necessarily whenever a railroad takes possession of the property of another, without authority, its possession is illegal.*" Italics ours. Id., 153 Tenn. at pages 291, 292, 282 S. W. at page 384.

This, it seems to us, implies that until the appropriating corporation takes steps to have its needs set apart by metes and bounds and the amount of compensation due the owner determined and paid its possession, though not subject to interference by the owner because of its public nature, is illegal. An illegal possession cannot ripen into a vested legal right to an easement short of 20 years adverse possession. The failure of the owner to exercise *his* right to sue for damages will not be held to confer vested rights upon the expropriator of his property without compensation. Code Section 3110 places the burden of having the right of way laid off upon the condemner and there can be no doubt that an easement can be acquired in the manner provided. But the landowner, in that case, receives just compensation and the extent of the easement becomes a matter of record. He is also relieved of the necessity of taking affirmative action to insure that his rights will be preserved. Section 3131 merely confers upon him the option of having his rights and compensation determined and paid in case the condemner fails to proceed according to the statute. Section 3110 outlining the procedure and defining the duties of the condemner uses the imperative "shall' while Section 3131 uses the permissive "may".

■ The statute under consideration in Railway Company v. Telford's Executors, 89 Tenn. 293, 14 S. W. 776, expressly provided that if the landowner failed to sue for damages within a period of five years his action for damages would be barred and the railway vested with "good right and title". Similar statutes have been given effect elsewhere. 30 C. J. S., Eminent Domain, sec. 452, note 9, p. 214. The statutes here under consideration, however, contain no such provision and, under the rule of strict construction, it should not be included by implication. If the Legislature had intended such a result we must assume that it would have so provided as it did in the statute under consideration in Railway Company v. Telford's Executors, supra.

■ The power of eminent domain being a grant of sovereign power and in derogation of private property rights will not pass by implication but is limited, both as to the exercise of the power and quantum of property or estate acquired, by the express terms or clear implication of the statute. City of Chattanooga v. State of Georgia, 151 Tenn. 691, 698, 272 S. W. 432; Swicegood v. Feezell, 29 Tenn. App. 348, 353, 196 S. W. (2d) 713; 18 Am. Jur., Eminent Domain, Sections 26, 114, 115; 29 C. J. S., Eminent Domain, sec. 22, p. 806.

■ ■ There is nothing in the statute bearing the construction that a vested right of easement was to be conferred upon the bare entry of the condemner and the appropriation of the land without compensation and the one year limitation bars only the action for damages—not the right to re-enter and repossess the land whenever that can be done without interfering with a public use. We, therefore, conclude that the Tennessee Public Service Company acquired only a possessory right and not a

transmissible right; that subsequent conveyances passed nothing and that the city had no right to use the land when it began the construction of the new line.

It is true Smith v. Nashville & K. Railway Co., 88 Tenn. 611, 13 S. W. 128; Tennessee, Coal, Iron, etc., Co. v. Paint Rock etc., Co., 128 Tenn. 277, 160 S. W. 522; Shinkle v. Nashville Improvement Co., 172 Tenn. 555, 113 S. W. (2d) 404 and Tennessee Electric Power Co. v. Holt, 3 Tenn. App. 372, loosely refer to the right acquired by a public service corporation which enters upon the land without instituting condemnation proceedings as an easement or right of way. The first of these cases involved only the question of the right of a subsequent purchaser of the land to sue under Section 3132 and the nature of the right acquired by the appropriating corporation was not material. The Tennessee Coal Company case was an injunction suit and the Court simply held that it could not be maintained against a public service corporation to regain possession of the land. Tennessee Electric Power Co. v. Holt was a suit under Section 3132 and the question of the nature of the right acquired by the occupying corporation was not involved. Shinkle v. Nashville Improvement Co. was a suit to enforce a vendor's lien on land through which a public service corporation had laid a water line after the creation of the lien. No property of the complainant was appropriated. The Court said that the Pipe Company had acquired an easement in the *"streets"* and, although not involved, referred to the fact that the right to sue for damages was barred under Section 3132. Apparently on that ground, as well as on the equitable ground that the property upon which the complainant had a lien had been benefited by the construction of the line, the suit was dismissed as to

the Pipe Company. None of these cases involved the question here presented of whether the appropriating corporation acquired as against the land owner an interest capable of being transmitted by deed.

 If, however, an easement was acquired by Tennessee Public Service Company, we think it was abandoned when the line was dismantled in 1944 and the land allowed to remain unused for public purposes from that time until after the grant to the city in 1952.

The responsible officials of TVA testified that when it was decided, in 1943, to dismantle the line it was noted on the work order that the right of way was not to be "retired" because it was felt that the future growth of the city would eventually require a transmission line at that location, in which event it could be sold to the city. But as to TVA itself the reason was stated by Mr. De Merit, Chief Power Engineer of TVA, on cross examination to be that when Cherokee dam was completed the substations being served out of Arlington could be supplied from that source and "we could dispense with that line", meaning the line here in question.

We think it is clear that TVA determined that there was no existing public need for a right of way at that point and determined to hold it until an indefinite and undeterminable future time when the anticipated growth of the City of Knoxville would require the city to obtain a line to supply the needs of its inhabitants. The land was not put to any public use whatever for a period of 8 years.

The excellent brief of counsel for the city cites a number of cases for the general rule that mere nonuser of an easement, unaccompanied by an intention to abandon,

is not sufficient to constitute legal abandonment. These cases are Boyd v. Hunt, 102 Tenn. 495, 52 S. W. 131; Smelcer v. Rippetoe, 24 Tenn. App. 516, 147 S. W. (2d) 109; Cottrell v. Daniel, 30 Tenn. App. 339, 205 S. W. (2d) 973; State ex rel. Phillips v. Smith, 34 Tenn. App. 608, 241 S. W. (2d) 844.

In none of these cases except State ex rel. Phillips v. Smith was there a showing that the easement was created by condemnation rather than by grant or prescription. The Smith case involved an encroachment on a public highway. It was held that an encroachment on a part of the right of way not being used for travel was not inconsistent with the purpose of the easement and was not evidence of an intention to abandon. There was no evidence of such intention and it was not necessary to consider the effect of long continued nonuser by the holder of the easement upon the presumed intention of the condemner and the burden of proof.

The generally accepted rule is that *where a right of way is condemned* it reverts upon nonuser to the owner of the fee, Brady v. Correll, 20 Tenn. App. 224, 97 S. W. (2d) 448, and that long continued nonuser is evidence of an intention to abandon. 30 C. J. S., Eminent Domain, sec. 458, p. 218. The rule is based on the fundamental principle that, in the taking, there is implied a condition that the land will be devoted to a public use and where it is not being so used for an unreasonably long period of time there may be a presumption of abandonment, Ib. and the burden is cast upon the condemner to disprove an intention to abandon. See 18 Am. Jur. 747; Muhle v. New York, T. & M. Ry. Co., 86 Tex. 459, 25 S. W. 607.

In Chicago, etc., Ry. Co. v. Clark, Tex. Civ. App., 146 S. W. 989, 991, following the Muhle case, it was said:

" 'So, where the property which has been condemned for a special use by a railroad corporation has never been appropriated to such use, and where there are circumstances which tend to show that the intention to use it for the special purpose has been permanently abandoned, it would devolve upon the corporation to explain the nonuser, and to show that the abandonment is temporary' ".

Further on in the opinion the court said that a temporary use of the property for a purpose different in character from that for which it was condemned would not forfeit the rights of the condemner, " 'provided there existed a definite intention to use it for legitimate purposes at a fixed time in future, or upon the happening of some well-defined contingency.' "

In Curran v. City of Louisville, 147 Ky. 592, 144 S. W. 1057, it was held that failure to devote property condemned for a public purpose to a public use may amount to an abandonment, although mere nonuser will not work an abandonment *unless continued for a sufficient length of time to indicate an actual intention to abandon.*

In a note at Ann. Cas. 1915B, 993, it is said:

"The reported case holds that property which has been appropriated for a public use must be devoted to that use within a reasonable time, and such rule would seem to result inevitably from the fact that the public use is the sole justification for the exercise of the power of appropriation."

We think it affirmatively appears from the testimony of Mr. De Merit above referred to that TVA in attempting to hold the right of way easement, if such it was, to borrow the language of Chicago, etc., Ry. Co. v. Clark, supra, did not have in mind "a fixed time in the future" when it would be needed "or upon the happening of a well-defined contingency."

We cannot follow the argument of the city that it is entitled to the easement because its predecessor in title held the line under the original grant of easement of 1912 conveying a right of way across the large tract of farm land out of which plaintiff's lots were later carved. It is said possession under that color of recorded grant, for a period of more than seven years, under Code Section 8582, ripened into a vested legal title. The grant of 1912 gave the grantee the right to select the exact location of the line after completing its survey. Shortly thereafter the grantee selected a location and built the line. When it did so it exhausted the right to fix the location of its easement. Tennessee Electric Power Co. v. Holt, 3 Tenn. App. 372; Tennessee Public Service Co. v. Price, 16 Tenn. App. 58, 65 S. W. 879. It results that the removal of the line upon plaintiff's lots in 1930 was not under the grant of 1912 and, in our view, it cannot be held to constitute color of title. We must, therefore, conclude that if the City had an easement it was not a granted or prescriptive easement and that the stricter rule of abandonment applying to condemned easements must govern.

It results that there was no error in directing the jury to find for the plaintiff and to fix the amount of the damages. Affirmed, with costs.

Hale and Howard, J.J., concur.